511 S.E.2d 351

**In the Matter of Harry C. BROWN, Sr., Respondent.**

Supreme Court of South Carolina.

June 4, 1998.

## ORDER

■ By order dated December 18, 1996, respondent, a probate judge, was privately reprimanded and ordered not to personally retain any further compensation for performing marriages. He was further ordered to remit to the county treasurer any compensation he had received for performing marriages since September 11, 1996, and to remit to the county treasurer any compensation he received after the date of the order.

On December 18, 1997, an order was issued requiring respondent to show cause why he should not be held in contempt for violating the December 18, 1996, order. The order also appointed the Honorable John W. Kittredge as a referee to take evidence and make findings of fact and a recommendation as to whether respondent was in contempt of this Court's December 18, 1996, order. The referee filed his report in which he recommended that respondent be held in civil and criminal contempt for willfully violating the order. A hearing was held before this Court on May 26, 1998, and, after fully considering the matter, we agree with the findings and recommendations contained in the report of the referee. The referee's findings, with slight modifications, are set forth below:

The Supreme Court in clear and unmistakable language stated:

[W]e order respondent not to personally retain any further compensation for performing marriages, and direct him to remit to the county treasurer, within fifteen (15) days of the date of this opinion, all compensation he has received for performing marriages since September 11, 1996, and any compensation he may receive in the future for performing marriages. His failure to do so may result in a finding of civil or criminal contempt....

It is equally clear that respondent has utterly disregarded and violated the Supreme Court order. Since September 11, 1996, respondent has performed 1,121 marriages, of which approximately 800 occurred following the December 18, 1996, order. It is stipulated that in a majority of these marriages he charged and retained a "marriage ceremonial fee," typically $50. It appears the ceremonial fee was waived only when the couples were Jasper County residents. Respondent has never remitted one penny of his marriage ceremonial fees to the county treasurer.

In connection with the elements of contempt, the only element in serious dispute is that of "willfulness." Respondent presents a host of reasons to avoid a finding of willfulness, all of which I find manifestly without merit.

1. *Historical precedent.* Respondent argues that Jasper County probate judges have traditionally charged and retained a fee for performing marriages. Respondent

contends this tradition somehow authorized him to continue the practice notwithstanding the Supreme Court order. This argument borders on frivolity.

2. *Special legislation and Jasper County Ordinance 2–52.* Respondent relies on statutory authority, Act No. 1148, 1974 Acts 2632, in support of his position. He apparently contends this special legislation overrides the authority of the Supreme Court to enforce the Code of Judicial Conduct. This argument is similarly lacking in merit. In December 1994, the Jasper County Council passed an ordinance (2–52) requiring all county employees and elected officials to deposit all fees (such as marriage ceremonial fees) with the Jasper County treasurer's office. The ordinance was intended to raise additional revenues. Respondent was one of the targets of this ordinance. Henry Moss, Jasper County Administrator, met with respondent on at least two occasions in an effort to gain his compliance with the ordinance. The county proposed a substantial salary increase and a requirement that respondent comply with the ordinance by remitting all marriage ceremonial fees to the county treasurer. Respondent adamantly rejected the county's efforts, complaining that the salary increase would actually result in a loss of income. In addition to the financial concern, respondent claimed (and still claims) the ordinance is invalid and contrary to law. I find respondent's argument is not relevant to the limited issue before me. In any event, the Supreme Court has previously considered and rejected this argument in its issuance of a private reprimand to respondent. The Supreme Court's December 18, 1996, order, and January 9, 1997, order, denying respondent's petition for rehearing, held that a statute "cannot authorize a judge to engage in conduct which is prohibited by the Code of Judicial Conduct."

3. *Respondent's "constitutional rights" invalidate the Code of Judicial Conduct.* Without stating the precise constitutional right at stake, respondent (in his sworn statement taken January 23, 1998) asserts a nebulous claim that his ability to charge for and retain marriage ceremonial fees involves a fundamental constitutional

right. Akin to this assertion is the claim that it is impermissible for the Code of Judicial Conduct, and hence the Supreme Court, to hold judges to a higher standard than non-judges. This position is specious and the Supreme Court so held on January 9, 1997. Even assuming respondent genuinely entertained such a position prior to January 9, 1997, he could not do so after that date. Any legal challenge to the validity of the order of the South Carolina Supreme Court ended when respondent's petition for a writ of certiorari to the United States Supreme Court was denied on February 18, 1997. To be sure, the South Carolina Supreme Court order of December 18, 1996, is the law of the case.

4. *Jasper County's December 15, 1997, resolution.* In a futile effort to excuse his failure to comply with the December 18, 1996, order, respondent entered into an agreement with a majority of the Jasper, County Council on December 15, 1997. That agreement and resulting resolution adopted ordinance 2–52. In other words, respondent embraced the very ordinance which he had repudiated on legal and financial grounds two years earlier. A part of the December 15, 1997, agreement provides that Jasper county "agrees to waive the collection of any and all sums collected by respondent for performing marriage ceremonies up to the date of the execution of this agreement." Respondent's argument here is two-fold: (a) Jasper County's "waiver," he contends, moots his obligation to comply with the order of the Supreme Court. Respondent's position is meritless. The Supreme Court is charged with enforcing the Code of Judicial Conduct. In discharging this important duty, the Supreme Court issued an order. Succinctly stated, a county resolution does not render a Supreme Court order unenforceable; (b) Respondent further suggests that the December 15, 1997, agreement and resolution in evidence of a lack of willfulness. I find respondent's role in the December 15, 1997, agreement and resolution tends to demonstrate the willful nature of his noncompliance with the Supreme Court order. Had respondent genuinely believed the Supreme Court order

to be unenforceable, there would have been no need for this last minute maneuvering.

To the extent respondent persists that he did not willfully violate the Supreme Court order, I find the evidence compellingly and convincingly to the contrary. Respondent did, in fact, willfully violate the December 18, 1996, Supreme Court order. I do not make this finding lightly. I am well aware that the intent element of contempt is subjective. I find that the necessary subjective intent has been proven. In the initial complaint and investigation respondent argued, among other things, that his conduct was statutorily authorized. The Supreme Court issued a private reprimand. Perhaps respondent harbored some good-faith belief prior to September 11, 1996, that his conduct was statutorily authorized and, therefore, ethical. The Supreme Court's minimum sanction may suggest some deference to respondent's purported good-faith belief at that time. The Supreme Court orders, however, have laid the matter to rest and now preclude respondent from effectively asserting those same defenses in this contempt action.

Respondent maintained no records of his marriage ceremonial fees. His method of reporting was, at best, loose. He simply reported to his accountant the amount of such fees. For purposes of this proceeding, Disciplinary Counsel has accepted respondent's figures. The parties have stipulated: (1) that most marriages performed by respondent resulted in a ceremonial fee, usually $50; and, (2) that respondent's "gross receipts" for such fees are $32,038 for the period from September 11, 1996, until the issuance of the rule to show cause in December of 1997. The net to respondent was $22,427. The evidence reveals respondent averaged approximately $25,000 gross annually from performing marriages. This explains respondent's initial adamant refusal to comply with ordinance 2–52. The county's $42,000 [or $37,000 per respondent's testimony] salary proposal paled in comparison to respondent's total income from county salary and fees for performing marriages.

The foregoing analysis seems to compel severe and immediate contempt sanctions against respondent. My view of the matter leads me to recommend a measured, moderate response. While respondent's longstanding disobedience to

the Supreme Court order is most troubling, I find the totality of circumstances mitigates in favor of only a civil contempt sanction at this time. Judge Brown has served well as a probate judge for Jasper county. Based on the record before me, he is generally well respected by the practicing bar. He provided a valuable service in performing marriages. Jasper County, because of its strategic location at the South Carolina/Georgia border, attracts many non-residents seeking marriage licenses and weddings.

I am convinced respondent refused to remit marriage ceremonial fees due to his financial circumstances. When the layers of legal arguments are peeled away, financial considerations are at the core of respondent's refusal to remit marriage fees to the county treasurer. The income generated from performing marriages approximated his modest salary from Jasper County. According to respondent, he was "between a rock and a hard place" and faced a dilemma—either 'feed my family or file bankruptcy.' He chose to 'feed his family' (i.e., retain marriage ceremonial fees) and thus lamentably disobeyed the Supreme Court order. Respondent did cooperate with Disciplinary Council "in resolving the basic factual issues necessary to bring this case to conclusion." My observations of respondent's demeanor and testimony persuades me that his professed regret and sorrow is, at least in part, genuine and not solely the result of self-serving judicially motivated repentance. Quite frankly, it appears to me respondent only recently fully appreciated the potential consequences for willfully violating an order of the Supreme Court.

The power to punish for contempt is inherent in all courts and is essential to preservation of order in judicial proceedings. *State v. Havelka*, 285 S.C. 388, 330 S.E.2d 288 (1985). Willful disobedience of an order of the Court may result in contempt. *Spartanburg County Dep't of Social Services v. Padgett*, 296 S.C. 79, 370 S.E.2d 872 (1988); *Curlee v. Howle*, 277 S.C. 377, 287 S.E.2d 915 (1982). A willful act is defined as one "done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or

disregard the law." *Spartanburg County Dep't of Social Services v. Padgett, supra.*

The evidence in this case shows beyond a reasonable doubt that respondent willfully violated this Court's December 18, 1996, order. *State v. Bowers,* 270 S.C. 124, 241 S.E.2d 409 (1978). Accordingly, we hold respondent in civil contempt and in criminal contempt. For the civil contempt, we sentence respondent to jail for a period not to exceed one year, to be released upon the payment of $22,427 to the Jasper County treasurer. Respondent may avoid incarceration by the immediate payment of $1,000, and may purge the contempt by a payment in the amount of $500 to the Jasper County treasurer on the first day of each month for a period of 24 months. At the conclusion of the 24 month period, the balance remaining will be due. Respondent shall submit proof of each payment and compliance to the Clerk of this Court by the 5th of each month. Failure to make any payment in a timely manner will accelerate the balance then due. Failure to comply will result in incarceration subject, of course, to release upon full compliance. Within ten days of the date of this order, respondent shall present himself to the Sheriff of Jasper County to begin serving his sentence or shall pay $1,000 to the Jasper County Treasurer and shall provide proof of the payment to the Clerk of this Court. We defer sentence on the criminal contempt pending respondent's full compliance with the civil contempt sentence. Should respondent attempt to defeat the civil contempt sentence by the filing of bankruptcy or otherwise, the criminal contempt issue will be revisited and an appropriate sanction imposed.

IT IS SO ORDERED.

/s/ Ernest A. Finney, Jr., C.J.

/s/ Jean H. Toal, J.

/s/ James E. Moore, J.

/s/ John H. Waller, Jr., J.

/s/ E.C. Burnett, III, J.