594 S.E.2d 473

In the Matter of an ANONYMOUS FORMER
PROBATE JUDGE, Respondent.

No. 25794.

Supreme Court of South Carolina.

Submitted Feb. 18, 2004.
Decided March 22, 2004.

Henry B. Richardson, Jr., of Columbia, for the Office of Disciplinary Counsel.

Ben C. Harrison, of Spartanburg, for respondent.

PER CURIAM:

In this judicial disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) entered into an Agreement for Discipline by Consent pursuant to Rule 21 of the Rules for Judicial Disciplinary Enforcement, Rule 502, SCACR.[1] In the agreement, respondent admitted misconduct and consented to the imposition of a public reprimand. We accept the agreement and issue a public reprimand for the misconduct set forth herein.

### *Facts*

Respondent began serving as probate judge for Cherokee County in 1951. For years, respondent and his staff routinely charged fees to perform marriage ceremonies. All or a portion of the fees were retained by respondent for his personal use. Respondent did not report the receipt of these fees on the annual reports he was required to file with South Carolina Court Administration pursuant to Canon 5(H)(2) of the Code of Judicial Conduct, Rule 501, SCACR, nor did he report the additional compensation on his annual report filed with the South Carolina Ethics Commission.

On October 10, 1994, the Advisory Committee on Standards of Judicial Conduct issued Opinion No. 26–1994 regarding, among other things, the propriety of a probate judge charging a fee for performing marriage ceremonies and the propriety of a probate judge accepting and retaining an honorarium for performing marriage ceremonies. Therein, the Committee advised that probate judges in South Carolina could perform marriage ceremonies only if authorized to do so by the governing body of their respective counties.

---

1. Respondent passed away after entering into the agreement.

Relying on S.C.Code Ann. § 8–21–760 (1976), the Committee also advised that probate judges could collect fees for performing marriage ceremonies but only if the fees charged were authorized by the governing body of their respective counties and if the fees collected were deposited into the county's general fund.[2] The Committee noted that this Court, in *In the Matter of Johnson*, 302 S.C. 532, 397 S.E.2d 522 (1990), had held that (1) fees collected for services rendered by a probate judge in his capacity as probate judge are governed by Article 7 whether specifically enumerated therein or not, and (2) failure to deposit fees in the county fund was a violation of Canons 1 and 2A of the Code of Judicial Conduct, which require a judge to observe high standards of conduct and respect and comply with the law.

Finally, the Committee advised that a probate judge cannot accept nor retain an honorarium for performing marriage ceremonies. The Committee advised that a judge who accepts an honorarium for performing marital services is exploiting his judicial position for his own personal gain in violation of former Canon 5C(1) of the Code of Judicial Conduct, now Canon 4D(1), and that the honorarium cannot be accepted as a

---

**2.** Section 8–21–760 states the following:

The probate judges must receive salaries for performance of their duties pursuant to Section 8–21–765.

A probate judge who is receiving a salary greater than provided for his position under the provisions of this chapter must not be reduced in salary during his tenure in office. Tenure in office continues at the expiration of a term if that judge is reelected.

The governing body of the county shall provide the salary, equipment, facilities, and supplies of the support personnel and staff of the probate judge, together with all other costs necessary for the efficient operation of the court, including but not limited to, court reporters, secretaries, clerks, per diem, travel, educational, and other benefits for the judge and his staff. A probate judge is not prohibited from acting as special referee with the agreement of the county governing body, but no probate judge is eligible to serve as a standing master-in-equity.

The probate judge in each county must serve full time and shall carry out all duties assigned by law.

Fees and costs received under the provisions of this article by the officials of a county must be accounted for and paid into the general fund of the county as directed by the governing body of that county. Any remuneration received by a probate judge for performing duties assigned by the Department of Mental Health must be remitted by the probate judge to the county treasurer for deposit into the general fund of the county.

gift because it arises directly from duties and powers conferred upon the judge.

South Carolina Court Administration sent a copy of the advisory opinion to each of the probate judges in South Carolina. Respondent acknowledged he received a copy of the opinion in late 1994 or early 1995.

On February 7, 1995, respondent entered into a contract with Cherokee County which authorized respondent to perform marriages, established a $10 fee to be charged by the probate court for the issuance of a marriage license, and stated that "no less than monthly, [respondent] shall turn over the county's portion of funds collected ... to the treasurer together with a report of activity covered by the payment." However, the contract did not set or specifically authorize a fee to be paid to respondent for the *performance* of marriage ceremonies, it did not specifically authorize respondent to charge a fee for conducting marriage ceremonies, and it did not specifically authorize respondent to retain such a fee for respondent's own use, except for the vague reference to "the county's portion."

Thereafter, respondent and his staff continued to perform marriage ceremonies and collect, in addition to the fees due the county, a fee for the performance of marriage ceremonies in the amount of $10 for residents of Cherokee County and $20 for non-residents. The fees were retained by respondent for his personal use even when ceremonies were performed by respondent's staff instead of respondent.[3]

In 1998, this Court issued an opinion holding former Jasper County Probate Judge Harry C. Brown in contempt for willfully violating an order of the Court instructing him to refrain from retaining for his personal use any further compensation for performing marriage ceremonies.[4] *In the*

---

3. For several months during 2003, when respondent was unable to perform his judicial duties due to an injury, his staff continued to perform marriage ceremonies and collect fees for performing the ceremonies, and then paid the fees collected to respondent or someone acting on respondent's behalf.

4. The Court had previously issued a private admonition stating that the personal retention of payment for performing marriages involved an exploitation of judicial office for the judge's own personal gain. The

*Matter of Brown,* 333 S.C. 414, 511 S.E.2d 351 (1998). Respondent estimated he became aware of the *Brown* opinion approximately one month after it was issued.

On December 16, 1999, the Advisory Committee on Standards of Judicial Conduct issued another advisory opinion on this subject, specifically addressing the propriety of a probate judge accepting all or a percentage of a fee collected by the judge for performing marriage ceremonies. The Committee concluded a probate judge may collect a fee for performing marriage ceremonies if (1) the fee is authorized by the county governing body and if (2) the fee collected is deposited in the general fund of the county. *See* S.C.Code Ann. § 8–21–760 (fees and costs received under the provisions of Article 7 by the officials of a county must be accounted for and paid into the general fund of the county as directed by the governing body of that county).

South Carolina Court Administration sent a copy of the opinion to all of the probate judges in the state. Respondent acknowledged he received a copy. However, respondent and his staff continued to collect fees for the performance of marriage ceremonies until Disciplinary Counsel served respondent with a notice of full investigation on September 23, 2003.

On October 14, 2003, the Chief Justice of this Court issued a memorandum to all judges in the state regarding the retention of compensation for performing marriage ceremonies. Therein, the Chief Justice stated that no judge can retain for personal compensation any fees collected for performing marriage ceremonies, even if the fees are characterized as an honorarium or gift. The Chief Justice pointed out that the practice of retaining such fees had been declared a violation of the Code of Judicial Conduct in this Court's opinions in *Johnson* and *Brown,* as well as in Advisory Committee Opinion No. 26–1994. The Chief Justice stated further that the impropriety of retaining such fees should be clear from read-

---

Court stated further that even if it was assumed the payments were gratuitously given, the personal retention of the payments was improper since it involved a gift from a person who appeared before the judge in his official capacity as a probate judge. Moreover, the Court noted that it gave rise to a strong appearance of impropriety for a probate judge to personally retain compensation for performing marriages.

ing S.C.Code Ann. § 8–21–760 and Canons 1, 2A, 2B, 4D(1) and 4D(5) of the Code of Judicial Conduct.

The Chief Justice also stated in the memorandum that neither the governing body of a county nor a local act of the legislature can authorize a judge to personally retain compensation for performing marriages contrary to the Code of Judicial Conduct, and that the prohibition against a judge receiving compensation for performing marriage ceremonies applies to all judges regardless of when or where or under what circumstances the marriage ceremony is performed, or in what capacity the judge takes the oath, whether as a judge or a notary public, all arguments which were made in the *Brown* matter.

The Chief Justice instructed any judge who had retained compensation for the performance of marriages while serving as a judge in the South Carolina Unified Court System to promptly make a report of having done so to the Office of Disciplinary Counsel, initiate an audit to determine the amount of compensation retained, and repay that compensation to the general fund of their respective county.

"With the advantage of hindsight, the Chief Justice's Memorandum, and the advice of counsel," respondent admitted that charging fees for the performance of marriage ceremonies and retaining those fees for his own use and benefit violated the provisions of S.C.Code Ann. § 8–21–760, the published of opinions of this Court in *Johnson* and *Brown,* and the Code of Judicial Conduct. Thereafter, respondent ceased charging fees for the performance of marriage ceremonies.

In addition, at the request of Disciplinary Counsel, respondent provided an accounting of the fees collected by the Probate Court of Cherokee County, and retained and paid over to respondent for his personal use and benefit, from July 1, 1998 until the time he stopped collecting the fees.[5] Based on that accounting, it was estimated respondent and his staff collected, and respondent retained, approximately $51,380 during that time. Respondent agreed that the fees collected and retained by him or his staff during that time should have been

---

5. The parties agreed on a date of July 1, 1998 because it is approximately thirty days after the issuance of this Court's opinion in *Brown, supra.*

paid into the general fund of Cherokee County and that he was obligated to repay the funds. Respondent remitted that amount to the general fund of Cherokee County. Respondent further represented that no refund, rebate, bonus or any other compensation based on the amount refunded was paid by Cherokee County to respondent. Respondent agreed that it would be inappropriate under statutory law, this Court's opinions in *Johnson* and *Brown,* and the Code of Judicial Conduct, for respondent to accept forgiveness, a refund or a bonus of any portion of the amount remitted to Cherokee County, and respondent agreed not to accept such a refund, bonus or forgiveness of the amount owed in the future, although it was agreed this proviso would not operate to prevent Cherokee County from raising respondent's salary in a fashion provided by law as long as no such raise was contingent on fees collected by the probate court.

### *Law*

■ Respondent admitted that his conduct was in violation of the following canons of the Code of Judicial Conduct, Rule 501, SCACR: Canon 1 (a judge shall uphold the integrity and independence of the judiciary); Canon 1A (a judge should participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved); Canon 2 (a judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities); Canon 2A (a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary); Canon 3B(2) (a judge shall be faithful to the law and maintain professional competence in it); Canon 3C(1) (a judge shall diligently discharge the judge's administrative responsibilities and maintain professional competence in judicial administration); Canon 4D(1)(a) (a judge shall not engage in financial dealings that may reasonably be perceived to exploit the judge's judicial position); Canon 4D(1)(b) (a judge shall not engage in financial dealings that involve the judge in frequent transactions or continuing business relationships with those lawyers or other persons likely to come before the court on which the judge serves); Canon 4D(5) (a judge shall not

accept a gift, bequest, favor or loan from anyone except for in certain situations not applicable to this case); Canon 4H(1) (a judge may receive compensation and reimbursement of expenses for extra-judicial activities permitted by this Code, if the source of such payments does not give the appearance of impropriety); and Canon 4H(2) (a judge shall report the date, place and nature of any activity for which the judge received compensation, and the name of the payor and the amount of compensation so received; the judge's report shall be made at least annually and shall be filed as a public document in the Office of Court Administration).

Respondent also admitted that his conduct constitutes grounds for discipline under the following provisions of the Rules for Judicial Disciplinary Enforcement, Rule 502, SCACR: Rule 7(a)(1) (it shall be a ground for discipline for a judge to violate or attempt to violate the Code of Judicial Conduct) and Rule 7(a)(7) (it shall be a ground for discipline for a judge to willfully violate a valid court order issued by a court of this state or another jurisdiction).

### Conclusion

We accept the Agreement for Discipline by Consent and issue a public reprimand in this matter. We take the unusual step of issuing this reprimand, despite respondent's death, because of the recurring nature of this problem.

Further, we take this opportunity to address our concern over the ongoing and willful violation of S.C.Code Ann. § 8–21–760, this Court's opinions, and opinions of the Advisory Committee on Standards of Judicial Conduct by probate judges in this state.

Just recently, the Advisory Committee on Standards of Judicial Conduct was asked to issue yet another opinion on this topic—an opinion very similar to the one it was asked to issue in 1994. In Opinion No. 20–2003, the Committee addressed the propriety of a county procedure which grants probate judges a percentage of the fees collected by the probate court for performing marriage ceremonies.[6] Relying

---

6. The opinion states that Spartanburg County Council has recently approved a contract which provides that a minimum fee of $35 will be charged for the performance of marriage ceremonies, that the probate

on Canon 4D(1)(a) of the Code of Judicial Conduct, the Committee advised that while a county may take into consideration all of a probate judge's duties, such as performing marriage ceremonies, when determining the judge's salary, that salary must remain constant and may not be dependent on fees the probate judge collects for the performance of marriage ceremonies. The Committee advised that a judge who accepts a percentage of the court's fees for marital services performed is exploiting his judicial position for his own personal gain in violation of Canon 4D(1)(a). The Committee further advised that by merely keeping a portion of a fee charged for a marriage ceremony and granting the balance to the probate judge for his or her services, a county is granting the probate judge an honorarium. Finally, the Committee advised that the fee split cannot be accepted as a gift under Canon 4D(5)(a)-(c) because it arises directly from duties and powers conferred upon the judge.

■ Statutory law and judicial standards are clear on the prohibition against probate judges being compensated for the performance of marriage ceremonies. Despite this fact, this Court and the Advisory Committee on Standards of Judicial Conduct continue to be faced with judges intent on flouting the law and governmental entities intent on devising schemes to circumvent the law. The fact that the Chief Justice was forced, due to the refusal of certain judges to comply with the opinions, to issue a "cease and desist" memorandum reiterating that the practice violates statutory law and the Code of Judicial Conduct, is a clear indication that this matter is not being taken seriously. The Chief Justice, in her memorandum, directed any judge who has retained compensation for the performance of marriages while serving as a judge in the South Carolina Unified Court System to promptly make a report of having done so to the Office of Disciplinary Counsel, initiate an audit to determine the amount of compensation

---

judge may establish a different, larger fee for ceremonies that require additional efforts, and that for each ceremony performed by the probate judge or his staff, the county will receive $25, with the balance going to the probate judge or his designee for his services in performing the ceremonies, collecting the fees and maintaining proper records. The contract also states that fees received by the probate judge or his designee shall be in addition to the salary paid to the judge or his designee.

retained, and repay that compensation to the general fund of their respective county. We take this opportunity to reiterate that directive. Judges who fail to promptly comply with this directive and who continue to exhibit a cavalier attitude toward the statutory law, the opinions of this Court, the opinions of the Advisory Committee on Judicial Standards and the provisions of the Code of Judicial Conduct regarding this subject will receive a harsher sanction than those who promptly comply.

**PUBLIC REPRIMAND.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.