688 S.E.2d 588

**S.C. DEPARTMENT OF SOCIAL SERVICES on behalf of Natlynn D. Jimmerson, Respondent**

v.

**Eric F. JOHNSON, Appellant.**

**No. 4642.**

Court of Appeals of South Carolina.

Heard Oct. 13, 2009.

Decided Dec. 30, 2009.

---

428

Laree Anne Hensley, of North Charleston, for Appellant.

John M. Magera, S.C. Department of Social Services, of North Charleston, for Respondent.

WILLIAMS, J.

In this child support action, Eric Johnson (Johnson) argues he was not properly notified of the registration of his foreign

child support order and was improperly found in contempt for violation of the child support order. We affirm.

## FACTS

On March 20, 1998, Johnson was personally served with a summons and complaint concerning a child support matter from the North Carolina Department of Social Services (NCDSS) on behalf of Natlynn Jimmerson, the mother of Johnson's biological child. At the time, Johnson resided in North Carolina. NCDSS mailed the notice for the child support hearing to Johnson's last known address. A hearing to establish child support was held on June 5, 1998, but Johnson failed to appear. An order for child support in the amount of $421 per month was then entered against him on July 17, 1998. The order also required Johnson to keep NCDSS "informed of his current residence and mailing address." Johnson did not make the full monthly child support payments, although portions of his wages were withheld and applied towards his obligations.

Johnson later moved to South Carolina. NCDSS requested verification of his last known address from the United States Postal Service in January 2005. The United States Postal Service verified Johnson's address as 7986 Shadow Oak Drive, North Charleston, South Carolina. On February 28, 2005, NCDSS sent the case to the South Carolina Department of Social Services (SCDSS), seeking enforcement of the order and $19,085.68 in arrears. The child support order was subsequently filed and registered in South Carolina on January 3, 2007.[1] On May 3, 2007, notice of the registration was sent to Johnson at his last known address on Shadow Oak Drive in North Charleston, South Carolina.

Johnson's arrearages continued to increase due to his failure to obey the 2007 child support order, and by July 2007, $32,859.41 in arrears had accumulated. The clerk of court

---

[1]. The 2007 order was the second child support order registered against Johnson in South Carolina. The first order was issued in North Carolina in 1996 and registered in South Carolina in 2003. Johnson was also held in contempt for failure to pay $26,786.57 in child support pursuant to the 2003 order; however, Johnson does not contest the court's contempt finding for that order in this appeal.

issued a rule to show cause ordering Johnson to appear before the family court in September 2007 and show cause why he should not be found in contempt of court for failing to pay child support. The rule to show cause was sent by first-class mail to Johnson's Shadow Oak Drive address.

Johnson did not appear at the September 2007 hearing. The family court issued a bench warrant for failure to pay child support, and Johnson was arrested. At the contempt hearing, Johnson admitted he knew about both of his child support cases and acknowledged that although he was currently employed, he had failed to pay the requisite child support payments. Johnson was then found to be in civil contempt for failure to pay his child support as ordered. Johnson was sentenced to one year imprisonment, with the ability to purge the confinement upon the payment of $150 in court fees and $34,627.61 in arrearages.

Johnson filed a motion to reconsider, which was denied. This appeal followed.

## ISSUES ON APPEAL

On appeal, Johnson sets forth two main arguments:
1. The family court erred in finding Johnson received proper notice of the registration of the child support order.
2. The family court erred in finding Johnson in contempt for violation of the child support order because the procedure by which Johnson was found in contempt violated the requirements of fundamental due process.

## STANDARD OF REVIEW

"In appeals from the family court, an appellate court has the authority to find the facts in accordance with its own view of the preponderance of the evidence." *Carpenter v. Burr,* 381 S.C. 494, 501, 673 S.E.2d 818, 822 (Ct.App.2009). However, this broad scope of review does not require this court to disregard the family court's findings. *Lacke v. Lacke,* 362 S.C. 302, 307, 608 S.E.2d 147, 149–50 (Ct.App.2005). Nor must we ignore the fact that the family court judge, who saw and heard the witnesses, was in a better position to evaluate

their credibility and assign comparative weight to their testimony. *Mazloom v. Mazloom*, 382 S.C. 307, 317, 675 S.E.2d 746, 751 (Ct.App.2009).

## LAW/ANALYSIS

### 1. Notice of Registration

Johnson argues he did not receive proper notice of the registration of the foreign support order, and this lack of notice divested the family court of jurisdiction to enforce the order. We disagree.

#### A. Section 20–7–1140(A) & UIFSA

Johnson first contends SCDSS failed to comply with section 20–7–1140(A)[2] of the South Carolina Code as well as the Uniform Interstate Family Support Act (UIFSA) when it registered the foreign support order. We disagree.

At the time notice was sent to Johnson in May 2007, the South Carolina statute controlling registration and notice of a foreign support order read:

> The registering tribunal shall notify the nonregistering party of the registration of a support order or income withholding order issued in another state. *Notice must be given by first-class, certified, or registered mail or by any means of personal service authorized by the law of this State.* The notice must be accompanied by a copy of the registered order and the documents and relevant information accompanying the order.

S.C.Code Ann. § 20–7–1140(A) (Supp.2006) (emphasis added).

■ The notice of filing and the certificate of mailing for the registration order indicate SCDSS complied with these statutory requirements. The notice of filing directing SCDSS to notify Johnson stated, "The Child Support Enforcement

---

2. In support of his argument, Johnson references provisions from Title 20, Chapter 7, which govern paternity and child support. *See* S.C.Code Ann. §§ 20–7–952 to –1166 (Supp.2007). These code sections are now designated as Chapter 17 in Title 63 due to the Legislature's restructuring of the Children's Code. *See* S.C.Code Ann. §§ 63–17–10 to –4040 (Supp.2008). Because this case arose prior to the recodification, the former statutory citations are referenced when applicable.

Legal Division shall send by *first class mail* to the obligor at the address given above a Notice of Registration with a copy of the registered support order." (emphasis added). Furthermore, the certificate of mailing verified a Child Support Specialist for SCDSS "mailed in a sealed envelope, postage prepaid, a copy of the Notice of Filing of Registration" to Johnson at his Shadow Oak Drive address. Although Johnson argues there is no evidence in the record to indicate the Notice of Registration was sent by first-class mail, the certificate of mailing reflects otherwise.

Johnson additionally argues even though NCDSS verified his address in 2005, the notification of the child support registration was not sent by SCDSS to his Shadow Oak address until 2007. He contends that he was no longer living at this address when the notification was mailed; thus, it is inherently unfair to allow SCDSS's two-year delay in notifying him to work to his detriment.

Despite Johnson's contention, the North Carolina child support order at issue explicitly stated that Johnson was required to keep NCDSS informed of his current residence and mailing address. Johnson failed to establish at the contempt hearing or the Rule 59(e) hearing that he ever updated his address with NCDSS as required by both court order and state statute.[3] Furthermore, Johnson was already statutorily required to notify SCDSS of any change in his address for purposes of another child support order that was registered against him in May 2003.

South Carolina Code section 20–7–854 (Supp.2007) (currently § 63–17–450 (Supp.2008)) sets forth which information an obligor is required to maintain with SCDSS for child support purposes. Among other information, the obligor must provide his or her residence and mailing address and must notify

---

3. N.C.Code Ann. Section 50–13.9(c) (Supp.2008) states, "In an IV–D case, the parties affected by the order shall inform the designated child support enforcement agency of any change of address or other condition that may affect the administration of the order. The court may provide in the order that a party failing to inform the court or, as appropriate, the designated child support enforcement agency, of a change of address within a reasonable period of time may be held in civil contempt." (notification language in effect when original child support order registered in 1998).

SCDSS of any changes to this information within ten days of the effective date of change. § 20–7–854(A)(1), (2).

Despite his responsibility to update this information, Johnson never notified SCDSS of any changes in his address as he was statutorily required to do by virtue of the 2003 child support order. Further, Johnson openly acknowledged at his contempt hearing that he was aware of and was in arrearages on both the 2003 and 2007 child support obligations. Notwithstanding his acknowledgment of the two child support cases, Johnson failed to properly notify either SCDSS or NCDSS of his change in address.

■ Johnson's claim regarding UIFSA is also without merit. Section 605 of UIFSA, entitled "Notice of Registration of Order," states that a "registering tribunal shall notify the nonregistering party" when a support order is registered in another state. Unif. Interstate Family Support Act § 605(a) (2001). Johnson argues that the mailing of the registration failed to comport with the requirements of section 605 because he did not receive actual notice of the filing. However, our statute, not UIFSA, is controlling on the manner of notification. See Unif. Interstate Family Support Act § 305 cmt. (2001) ("[UIFSA] also directs that the individual or entity requesting the filing be notified, but leaves the means of that notification to local law."); S.C.Code Ann. § 20–7–1035 (Supp. 2007) (currently § 63–17–3230 (Supp.2008)) ("Except as otherwise provided in this article, a responding tribunal of this State shall ... apply the procedural and substantive law generally applicable to similar proceedings originating in this State ...").

Further, nothing in the plain language of section 605 or in the official comments mandates that the registering tribunal provide *actual notice* of the registration to the obligor. Rather, the comments indicate that because of a variety of notification methods, such as telephone facsimile or electronic mail, the method of notifying a nonregistering party should be governed by local law. *See* Unif. Interstate Family Support Act § 305 cmt. (2001). As such, the mailing of the Notice of Registration to his last known address by first-class mail was sufficient to notify Johnson of the child support order.

## B. South Carolina Rules of Civil Procedure

Johnson avers section 20–7–1140(A) allows for personal service of the Notice of Registration, which proves the Legislature intended the Notice of Registration to be personally served in compliance with Rule 4 of the South Carolina Rules of Civil Procedure. We disagree.

Rule 4(d)(1), SCRCP, governs service of a summons and complaint upon a defendant and mandates service upon an individual "by delivering a copy of the summons and complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, or by delivering a copy to an agent authorized by appointment or by law to receive service of process." Indeed, Rule 4 mandates personal service of a summons and complaint when an action at law is instituted. However, Johnson's argument overlooks that the notice of registration for an existing child support order is separate and distinct from the service of a summons and complaint. Johnson was already personally served with a summons and complaint in 1998 when the mother instituted this child support action; therefore, Rule 4, SCRCP, is inapplicable in this context.

For purposes of section 20–7–1140(A), Rule 5 of the South Carolina Rules of Civil Procedure governs how the Notice of Registration should be served. Rule 5 states that all "pleadings subsequent to the original summons and complaint" and "written notices" must be served upon a party by "delivering a copy to [the party] *or* by mailing it to [the party] at his last known address." Rule 5, SCRCP (emphasis added). While both section 20–7–1140(A) and Rule 5 permit personal service of a written notice upon a party, the Legislature's choice of the term "or" illustrates its intent to grant the registering tribunal the option of how to effectuate service. *See SCDSS v. Lisa C.*, 380 S.C. 406, 414, 669 S.E.2d 647, 651 (Ct.App.2008) ("If a statute's language is plain, unambiguous, and conveys a clear and definite meaning, rules of statutory interpretation are not necessary, and the court has no right to look for or impose another meaning."). As a result, SCDSS's decision to mail the Notice of Registration to Johnson's last known address comported with the South Carolina Rules of Civil Procedure.

## 2. Civil Contempt

Johnson claims the family court erred in finding him in contempt for violation of the child support order because the procedure by which he was found in contempt violated the requirements of fundamental due process. We disagree.

 Contempt results from the willful disobedience of a court order. *Moseley v. Mosier*, 279 S.C. 348, 351, 306 S.E.2d 624, 626 (1983). Before a court may find a person in contempt, the record must clearly and specifically reflect the contemptuous conduct. *Curlee v. Howle*, 277 S.C. 377, 382, 287 S.E.2d 915, 918 (1982). Once a moving party makes out a prima facie case of contempt by pleading the order and showing its noncompliance, the burden shifts to the respondent to establish his defense and inability to comply. *Means v. Means*, 277 S.C. 428, 430, 288 S.E.2d 811, 812 (1982). A finding of contempt rests within the sound discretion of the trial judge. *Haselwood v. Sullivan*, 283 S.C. 29, 32, 320 S.E.2d 499, 501 (Ct.App.1984).

██ Prior to the family court finding Johnson in contempt, the clerk of court issued a rule to show cause, requiring Johnson to appear in court for his failure to pay child support. The rule to show cause contained an affidavit and properly identified the parties to the action, the child support order at issue, and the amount of arrearages that had accumulated as of that date. Subsequently, the family court ordered that a bench warrant be issued for Johnson's refusal to obey the court's order to pay child support pursuant to South Carolina Code section 20–7–870 (Supp.2007) (currently § 63–17–390 (Supp.2008)). Johnson was arrested and then brought before the family court, at which time the family court conducted a hearing and found he had the ability to pay child support, but failed to do so. As a result, the family court found Johnson in civil contempt and sentenced him to one year in jail with the ability to purge his confinement by payment of the arrearages and $150 in court costs.

The Code contemplates an instance in which an alleged contemnor can be imprisoned for failure to obey a support order. In this situation, section 20–7–870 permits the family court to issue a bench warrant to hale an alleged contemnor into court without prior notice. Section 20–7–870 states,

"Where a respondent shall neglect or refuse to obey an order for support or upon agreement signed by the respondent and approved by the court, and the court is satisfied thereof by competent proof, it may, with or *without notice*, issue a warrant to commit the respondent to jail until the order is obeyed or until the respondent is discharged by law." (emphasis added).

 While this court is not bound by the opinions of the Attorney General, we find it instructive to reference an opinion specifically discussing section 20–7–870 [4] and its application in an indirect contempt proceeding. *See Price v. Watt*, 280 S.C. 510, 513 n. 1, 313 S.E.2d 58, 60 n. 1 (Ct.App.1984) ("While this Court is not bound by an opinion of our Attorney General, it should not be disregarded without cogent reason."). Noting the Code was silent on the issue of proper service of a rule to show cause for contempt, the Attorney General opined:

[T]he Court must be presented with proof that the party was personally served before it may issue a bench warrant which is based solely on respondent's failure to appear. When presented with satisfactory proof of personal service, the Court may, in its discretion, issue a warrant for the arrest of a person who fails to respond to a rule to show cause.

*See Op. S.C. Att'y Gen.*, 1979 WL 29077, at * 2 (June 5, 1979).

If, however, an alleged contemnor is *not* personally served with the rule to show cause, the family court may, pursuant to the provisions of section 20–7–870, use the scheduled court time to conduct a hearing to determine whether there is "competent proof" of disobedience of the court order. *Id.* If there is such proof, the family court may issue a warrant for the contemnor's arrest, which would be based on section 20–7–870, rather than the failure to respond to the rule to show cause. *Id.*

The record must demonstrate that there was competent proof of Johnson's failure to obey the order of support. Here, the record clearly reflects Johnson failed to comply with the

---

4. The Attorney General's opinion references S.C.Code section 14–21–70 (1976), which was repealed in 1981 and recodified as section 20–7–870. Section 20–7–870 is now designated as section 63–17–890 pursuant to the Legislature's restructuring of the Children's Code in 2008.

prior support order, of which he was properly notified. The clerk of court's records, along with Johnson's admission of noncompliance despite his ability to pay, provide clear and convincing evidence of noncompliance. *See Durlach v. Durlach*, 359 S.C. 64, 71, 596 S.E.2d 908, 912 (2004) ("Civil contempt must be proved by clear and convincing evidence."). In light of section 20–7–870 and Johnson's disobedience of the prior support order, the family court's issuance of a bench warrant and decision to sentence Johnson to one year in jail with the ability to purge his confinement by payment of the arrearages was not in error.

## CONCLUSION

Thus, the family court's decision is

**AFFIRMED.**

SHORT and GEATHERS, JJ., concur.