**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Galen E. Burdeshaw, Appellant,

v.

Jennifer Marie Burdeshaw, Respondent.

Appellate Case No. 2017-001337

———————

Appeal From Greenville County
Rochelle Y. Conits, Family Court Judge,
Harry LaDon Phillips, Jr., Family Court Judge, and
Katherine H. Tiffany, Family Court Judge

———————

Unpublished Opinion No. 2020-UP-105
Heard October 9, 2019 – Filed April 8, 2020

———————

**AFFIRMED IN PART AND REVERSED IN PART**

———————

Melissa D. Spivey, of The Spivey Law Group, LLC, of Mauldin, for Appellant.

Gwendolynn Wamble Barrett, of Barrett Mackenzie, LLC, of Greenville, for Respondent.

Robert A. Clark, of Greenville, for the Guardian ad Litem.

———————

**PER CURIAM:** In this appeal from orders of the family court, Galen Burdeshaw (Husband) argues the family court erred in (1) issuing a decree of divorce and final order (the Final Order) before hearing his contempt action against Jennifer Burdeshaw (Wife) and denying his motion for a new trial; (2) declining to hear his amended contempt complaint against Wife; (3) considering Wife's memorandum of law in making its determination on Husband's contempt action; (4) granting Wife's motion to reconsider the Final Order and awarding her the dependent tax exemption; (5) awarding Wife primary custody of the parties' child (Daughter); (6) failing to find Wife in contempt; (7) apportioning the marital estate; and (8) awarding Wife attorney's fees. We affirm in part and reverse in part.[1]

1. We find Husband waived any challenge to the family court's issuance of the Final Order prior to hearing his contempt action against Wife. At the close of trial, the family court stated its intention on the record to take the divorce action under advisement and begin preparing the Final Order. Husband neither objected to this statement nor made a request that the court hear the contempt action before issuing the Final Order. Although Husband alleged the family court erred by issuing the Final Order before hearing the contempt action in his motion to reconsider the Final Order, we find Husband failed to timely raise this issue to the family court when the issue first presented itself. *See Susan R. v. Donald R.*, 389 S.C. 107, 118, 697 S.E.2d 634, 640 (Ct. App. 2010) (providing that a party cannot use a Rule 59(e), SCRCP, motion to present to the family court an issue the party could have raised prior to judgment but failed to do so); *Hickman v. Hickman*, 301 S.C. 455, 456, 392 S.E.2d 481, 482 (Ct. App. 1990) ("A party cannot use Rule 59(e) to present to the court an issue the party could have raised prior to judgment but did not.").

We further find the family court did not err in denying Husband's motion for a new trial. Husband contends the family court erred in denying his motion for a new trial because his contempt action was not heard until three years after it was filed and his motion to reconsider the Final Order was not heard until two years after it was filed. Husband therefore contends the record was stale. We disagree. Although we acknowledge the span of time between the filing of Husband's motions and their ultimate resolution, we find the family court did not err in denying Husband's motion for a new trial. First, regarding Husband's contempt action, we find the passage of time is irrelevant as Husband was bound by the

---

[1] "Appellate courts review family court matters de novo, with the exceptions of evidentiary and procedural rulings." *Stone v. Thompson*, 428 S.C. 79, 91, 833 S.E.2d 266, 272 (2019).

violations alleged in his complaint and the subsequently issued rule to show cause. Similarly, as to Husband's motion to reconsider, we find the passage of time had no impact on the outcome as all of the evidence had already been presented to the family court, and Husband was bound by this evidence. We note the proper avenue for Husband to present new evidence regarding custody would have been through a motion seeking a custody modification. *See Latimer v. Farmer*, 360 S.C. 375, 381, 602 S.E.2d 32, 35 (2004) ("In order for a court to grant a change in custody, there must be a showing of changed circumstances occurring *subsequent to the entry of the divorce decree*." (emphasis added)); *Cook v. Cobb*, 271 S.C. 136, 143, 245 S.E.2d 612, 616 (1978) ("Generally, the change of conditions which justifies a change of custody must occur after the date of a decree establishing custody, and before the action seeking to upset custody is filed."). Further, we note Husband's numerous requests for a continuance of the contempt hearing consequently delayed the resolution of his motion to reconsider as the family court held the remaining issues of the motion to reconsider in abeyance until the hearing of the contempt action.

2. We find the family court did not err in declining to hear Husband's amended contempt complaint. A motion to amend the pleadings is left to the sound discretion of the family court. *Griffith v. Griffith*, 332 S.C. 630, 636, 506 S.E.2d 526, 529 (Ct. App. 1998); *see also Stoney v. Stoney*, 422 S.C. 593, 594 n.2, 813 S.E.2d 486, 486 n.2 (2018) (per curiam) (providing that on appeal from the family court, this court reviews evidentiary and procedural rulings for an abuse of discretion). "The rule to show cause, and the supporting affidavit or verified petition, shall be served, . . . , *not later than ten days before the date specified for the hearing, unless a different notice period is fixed by the issuing judge within the rule to show cause*." Rule 14(d), SCRFC (emphasis added). In the instant case, Husband moved to amend the contempt complaint, and the family court issued an amended rule to show cause less than ten days before the scheduled hearing. However, the family court failed to specify a different notice period within the amended rule to show cause. Accordingly, Wife did not receive proper notice of Husband's additional allegations of contempt. Thus, we find the family court properly denied Husband's motion to amend the contempt complaint. Further, we agree with the family court that the proper avenue for Husband to pursue new evidence of contempt is through a separate contempt action.

3. We find the family court did not err in considering Wife's supplemental memorandum in making its determination on Husband's contempt action. During the contempt hearing, the family court notified the parties of its intention to take the matter under advisement to fully review all relevant portions of the record. The

court further requested the parties submit a memorandum noting the specific exhibits and portions of the trial transcript that "tend to prove [their] position." Neither party objected to this request. Following the hearing, Wife submitted a memorandum complying with the court's request, which noted the relevant exhibits and portions of the trial transcript tending to show her compliance with the temporary orders. Husband also submitted a memorandum. We find Wife acted in compliance with the family court's request, and therefore, the family court did not err in considering her memorandum when making its determination. *See also Stoney*, 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2 (providing that on appeal from the family court, this court reviews evidentiary and procedural rulings for an abuse of discretion). Further, Wife's memorandum did not present any new evidence or arguments but, rather, responded to the allegations set forth by Husband during the hearing.

4. We find the family court erred in awarding Wife the dependent tax exemption. Husband argues the family court erred in considering child support and the tax exemption together and in finding Wife could benefit from claiming Daughter as a dependent based on Wife's income. We agree. Subsection 20-3-130(F) of the South Carolina Code (2014) provides, "The Family Court may allocate the right to claim dependency exemptions pursuant to the Internal Revenue Code and under corresponding state tax provisions . . . ." The South Carolina Child Support Guidelines (the Guidelines) stipulate that they are based on the assumption that the parent who is required to pay child support will only have one federal exemption and higher taxes than the parent who is owed child support, but it notes that the Schedule of Basic Child Support Obligations adjusts for that with lower child support payments.[2] Despite the assumption in the Guidelines, this court has held the family court may allocate a dependent tax exemption to a noncustodial parent. *See Hudson v. Hudson*, 340 S.C. 198, 204–05, 530 S.E.2d 400, 403–04 (Ct. App. 2000) (holding that the family court may allocate a dependent tax exemption to the noncustodial parent); *Engle v. Engle*, 343 S.C. 444, 447, 454, 539 S.E.2d 712, 713, 717 (Ct. App. 2000) (affirming the family court's award of the dependent tax exemption to the noncustodial father when the family court reasoned the father earned the greater income and would benefit most from the exemption). At the time of trial, Wife's gross monthly income was $644.33 per month, and Husband's gross monthly income was $9,046. When asked if the dependent tax exemption

---

[2] *South Carolina Child Support Guidelines* 3 (2014), https://dss.sc.gov/media/1585/2014-child-support-guidelines-booklet.pdf; *see generally* S.C. Code Ann. Regs. 114-4710 (Supp. 2019) ("The Child Support Guidelines are available to be used for . . . divorce and child support awards.").

would be more beneficial to Husband, Wife's attorney stated "maybe for now, but not necessarily forever."  Although Wife argues she receives a benefit from claiming Daughter as a dependent on her taxes because she receives an earned income credit (EIC),[3] the certified public accountant's (CPA) affidavit asserted Wife would receive the EIC without claiming Daughter as a dependent, and we did not find any contrary evidence in the record.[4]  Thus, we find the family court erred in awarding Wife the dependent tax exemption.  Accordingly, we reverse the family court's order as to this issue.

5. We find the family court did not err in awarding Wife primary custody of Daughter.  *See Divine v. Robbins*, 385 S.C. 23, 32, 683 S.E.2d 286, 291 (Ct. App. 2009) (providing that the controlling considerations in all child custody controversies are the child's welfare and best interest); S.C. Code Ann. § 63-15-230(A) (Supp. 2019) ("The court shall make the final custody determination in the best interest of the child based upon the evidence presented."); *Bojilov v. Bojilov*, 425 S.C. 161, 176, 819 S.E.2d 791, 800 (Ct. App. 2018) (alterations in original) ("In making its custody determination, '[t]he family court must consider the character, fitness, attitude, and inclinations on the part of each parent as they impact the child,' and it should also consider 'the psychological, physical, environmental, spiritual, educational, medical, family, emotional[,] and recreational aspects of the child's life.'" (quoting *Woodall v. Woodall*, 322 S.C. 7, 11, 471 S.E.2d 154, 157 (1996))); *Brown v. Brown*, 412 S.C. 225, 239, 771 S.E.2d 649, 656 (Ct. App. 2015) (providing that it is also appropriate for the family court to consider the opinions of third parties, including the GAL and expert witnesses); *Woodall*, 322 S.C. at 11, 471 S.E.2d at 157 ("[A]ll the conflicting rules and presumptions should be weighed together with all of the circumstances of the particular case, and all relevant factors must be taken into consideration."); S.C.

---

[3] In a hearing on Wife's motion to reconsider, Wife's attorney indicated Wife would qualify for an EIC, but Wife would have to list a qualifying child to do so, and therefore, Wife needed to be able to claim Daughter on her income taxes.
[4] Wife also argues if she begins working more so that she makes her imputed income, she would not be able to claim work-related daycare costs as a tax exemption because she would not be able to claim Daughter as a dependent. However, this argument is speculative, and Wife may petition the family court for a reallocation of the dependent tax exemption based upon changed circumstances should this occur.  *See Hudson*, 340 S.C. at 207–08, 530 S.E.2d at 405 (finding the family court may reallocate the dependent tax exemption upon a showing of actual changed circumstances warranting the reallocation under the facts as they then exist).

Code Ann. § 63-3-530(A)(42) (2010) (providing that the family court has jurisdiction to order joint custody when it finds it is in the best interest of the child); S.C. Code Ann. § 63-15-240(B) (Supp. 2019) (providing a nonexclusive list of seventeen factors the family court may consider when determining the best interest of the child); *Lewis v. Lewis*, 400 S.C. 354, 367, 734 S.E.2d 322, 328–29 (Ct. App. 2012) (providing that South Carolina courts are "particularly reluctant to award joint custody between estranged and quarrelsome parents"). We find Husband failed to show exceptional circumstances warranting an award of joint custody, and our review of the record supports the conclusion that joint custody in this case would not be in the best interest of Daughter given the acrimonious relationship between Husband and Wife.

6. We find the family court did not err in failing to find Wife in contempt. *See Widman v. Widman*, 348 S.C. 97, 119, 557 S.E.2d 693, 705 (Ct. App. 2001) ("The power to punish for contempt is inherent in all courts and is essential to preservation of order in judicial proceedings." (quoting *In re Brown*, 333 S.C. 414, 420, 511 S.E.2d 351, 355 (1998))); *id.* ("Contempt results from the willful disobedience of a court order, and before a court may find a person in contempt, the record must clearly and specifically reflect the contemptuous conduct."); *S.C. Dep't of Soc. Servs. v. Johnson*, 386 S.C. 426, 435, 688 S.E.2d 588, 592 (Ct. App. 2009) ("Once a moving party makes out a prima facie case of contempt by pleading the order and showing its noncompliance, the burden shifts to the respondent to establish his defense and inability to comply."); *Miller v. Miller*, 375 S.C. 443, 454, 652 S.E.2d 754, 760 (Ct. App. 2007) (providing that the family court has the discretion to punish by fine or imprisonment all contempt of authority before the court); *id.* at 455, 652 S.E.2d at 760 ("In addition, courts have the inherent power to punish for offenses that are calculated to obstruct, degrade, and undermine the administration of justice." (quoting *Brandt v. Gooding*, 368 S.C. 618, 628, 630 S.E.2d 259, 264 (2006))); *Poston v. Poston*, 331 S.C. 106, 113, 502 S.E.2d 86, 89 (1998) ("Civil contempt must be proven by clear and convincing evidence."). On appeal, Husband raises numerous allegations of Wife's contemptuous conduct. We find Husband failed to meet his burden of proof as to all alleged grounds. *See Widman*, 348 S.C. at 119, 557 S.E.2d at 705 ("Contempt results from the willful disobedience of a court order, and before a court may find a person in contempt, the record must clearly and specifically reflect the contemptuous conduct."); *Posner v. Posner*, 383 S.C. 26, 31, 677 S.E.2d 616, 619 (Ct. App. 2009) (providing that under de novo review of family court matters, the appellant maintains the burden of convincing the appellate court that the family court's findings were made in error or were unsubstantiated by the evidence).

7. We find the family court did not err in apportioning the marital estate. *See Crossland v. Crossland*, 408 S.C. 443, 456, 759 S.E.2d 419, 426 (2014) ("Equitable distribution of marital property 'is based on the recognition that marriage is, among other things, an economic partnership.'" (quoting *Morris v. Morris*, 335 S.C. 525, 531, 517 S.E.2d 720, 723 (Ct. App. 1999))); S.C. Code Ann. § 20-3-630(A) (2014) (providing that "marital property" means "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation . . . regardless of how legal title is held"); *Pirri v. Pirri*, 369 S.C. 258, 270, 631 S.E.2d 279, 285 (Ct. App. 2006) ("Property acquired prior to the marriage is generally considered nonmarital."); § 20-3-630(A)(3) (providing that property acquired by a party in exchange for property acquired before the marriage is also nonmarital); *Brown v. Odom*, 425 S.C. 420, 431, 823 S.E.2d 183, 188 (Ct. App. 2019) (providing that when a marriage is dissolved, the distribution of the marital estate should be in a manner that "fairly reflects each spouses' contribution to its acquisition, regardless of who holds legal title"); *Wilburn v. Wilburn*, 403 S.C. 372, 384, 743 S.E.2d 734, 740 (2013) ("Property that is nonmarital when acquired may be transmuted into marital property if it becomes so commingled with marital property that it is no longer traceable, is titled jointly, or is used by the parties in support of the marriage or in some other way that establishes the parties' intent to make it marital property."); *Pirri*, 369 S.C. at 270, 631 S.E.2d at 286 ("Transmutation is a matter of intent to be gleaned from the facts of each case." (quoting *Jenkins v. Jenkins*, 345 S.C. 88, 98, 545 S.E.2d 531, 537 (Ct. App. 2001))); *id.* (providing that the spouse claiming transmutation has the burden of producing "objective evidence that the parties considered the property to be marital during the marriage"); *see also Dawkins v. Dawkins*, 386 S.C. 169, 173–74, 687 S.E.2d 52, 54 (2010) (per curiam) (providing that an inheritor's right for special consideration upon divorce is not extinguished by the transmutation of the inherited nonmarital property into marital property), *abrogated on other grounds by Lewis v. Lewis*, 392 S.C. 381, 384–86, 708 S.E.2d 650, 651–52 (2011); *Toler v. Toler*, 292 S.C. 374, 380, 356 S.E.2d 429, 432 (Ct. App. 1987) (holding that the proceeds from the sale of the husband's inherited property lost their nonmarital character when the husband used the proceeds to purchase a farm, which was titled in both parties' names and was used as the primary source of support for the marriage); *Fredrickson v. Schulze*, 416 S.C. 141, 149–50, 785 S.E.2d 392, 397 (Ct. App. 2016) (affirming the family court's consideration of the wife's substantial contribution to the down payment of the family home using premarital funds when determining the percentage of the marital estate that each party was entitled to upon distribution). In the instant case, we find the family court properly treated Husband's down payment in the same manner as the inheritances in *Toler* and

*Dawkins* and the down payment in *Fredrickson*—as a consideration when determining the percentage of the marital estate Husband was equitably entitled to. We find the family court properly declined to subtract Husband's down payment from the marital estate. Our review of the record supports Wife's contention that the down payment was transmuted into marital property because the home was titled in both parties' names, the initial mortgage listed both parties, and Wife was only removed from the mortgage because Husband was able to get a lower interest rate when the parties' refinanced the home. Further, Husband agreed he had no intention of getting divorced and he had an intent to make it joint marital property. Accordingly, we find the family court did not err in declining to apportion Husband a dollar-for-dollar credit for his down payment on the marital home.

8. As to attorney's fees, we find the family court did not err in its determination that Wife should be awarded attorney's fees; however, we find the family court did err in its calculation of those fees. *See* S.C. Code Ann. § 20-3-130(H) (2014) (authorizing the family court to order payment of litigation expenses, such as attorney's fees, to either party in family matters); *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992) (holding that when determining whether to award attorney's fees, the family court should consider the following factors: "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) [the] effect of the attorney's fee on each party's standard of living"); *Spreeuw v. Barker*, 385 S.C. 45, 71, 682 S.E.2d 843, 856 (Ct. App. 2009) (providing that when deciding the amount of attorney's fees to award, the family court should consider the "(1) nature, extent, and difficulty of the case; (2) time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services" (citing *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991))); *Bodkin v. Bodkin*, 388 S.C. 203, 223, 694 S.E.2d 230, 241 (Ct. App. 2010) ("This court has previously held when parties fail to cooperate and their behavior prolongs proceedings, this is a basis for holding them responsible for attorney's fees."). The Final Order required Husband to pay $20,000 of Wife's attorney's fees, and the March 20, 2017 order required Husband to pay $5,000 in attorney's fees for the contempt action and $5,000 in attorney's fees for the motions to reconsider. Although the March 20, 2017 order indicated Husband was not successful in his motion to reconsider, we find Husband was successful in obtaining the right of first refusal, in obtaining a reduction in monthly child support payments, in having the payment of Wife's equitable division award incorporated into a qualified domestic relations order, and in defending against Wife's motion to alter the visitation schedule. Moreover, as discussed above, we

reverse the family court's award of the dependent tax exemption to Wife. Accordingly, we decrease Wife's award of attorney's fees resulting from the various motions to reconsider, as delineated in the March 20, 2017 order, to $2,500. *See Myers v. Myers*, 391 S.C. 308, 322, 705 S.E.2d 86, 94 (Ct. App. 2011) (finding that when an appellate court's decision diminishes a party's beneficial results, the appellate court may adjust the entitlement to attorney's fees instead of remanding the award of attorney's fees for reconsideration). We affirm Wife's award of $20,000 in attorney's fees issued in the Final Order and the award of $5,000 in attorney's fees issued in the March 20, 2017 order as to the contempt action.

**AFFIRMED IN PART AND REVERSED IN PART.**

**HUFF, WILLIAMS, and MCDONALD, JJ., concur.**