743 S.E.2d 734

Harriet Arnold WILBURN, Respondent,

v.

Paul Elijah WILBURN, Appellant.

Appellate Case No. 2011–191628.

No. 27222.

Supreme Court of South Carolina.

Heard Dec. 4, 2012.

Refiled May 8, 2013.

Rehearing Denied in Part and Granted in Part May 8, 2013.

374

376

David A. Wilson, and Kenneth C. Porter, of Porter & Rosenfeld, both of Greenville, for Appellant.

Timothy E. Madden, of Nelson Mullins Riley & Scarborough, LLP, of Greenville, for Respondent.

Justice HEARN.

These parties lived together as husband and wife for thirty years, enjoying a comfortable standard of living and raising two sons. Following the onset of serious health problems for both parties, they ultimately separated, and it became the task of the family court judge to identify and divide their rather substantial estate and dissolve their marriage in an equitable fashion. Among other issues, this case presents the novel question of whether trust distributions can be marital property, and we hold they can in certain limited circumstances. Additionally, while we affirm the majority of the family court's equitable division, we reverse the inclusion of one tract of timber as marital property. We also reverse the reservation of alimony to the wife and modify that portion of the order which required the husband to pay $156,182 for the wife's attorney's fees and costs.

## FACTUAL/PROCEDURAL BACKGROUND

Harriet Wilburn (Wife) and Paul Wilburn (Husband) were married in 1978, when Wife was twenty-five years old and

Husband was twenty-nine years old. At that time, Wife, a college graduate, was employed. Husband had graduated from law school and was employed in private practice.

The parties' first son was born in 1982. After his birth and by mutual agreement of the parties, Wife ceased working. Their second son was born in 1984. Although Wife never returned to work, she made significant expenditures of time and effort throughout the marriage caring for the children and running the household. Around the time their second son was born, Husband became an assistant United States attorney, a position he held until 1994.

After his father's death in 1990, Husband inherited some shares of stock. When his mother died in 1991, he inherited additional stock and several parcels of real property. Thereafter, Husband's health began to deteriorate, and he experienced ulcers and depression. In 1994, he suffered a serious and debilitating stroke. Ultimately, he was paralyzed on the left side of his body. He also suffered significant mental impairment with only a quarter of his brain still functioning, resulting in spatial dyslexia and the inability to process chronologies or numbers. Upon being discharged from the hospital, Husband returned home where he was cared for by Wife and paid caretakers. He was never able to return to work and began receiving a monthly annuity payment from the federal government. Also, the parties' home was not conducive to Husband's disability, so several years after his stroke the parties moved to a new home designed specifically for handicap accessibility.

Prior to his stroke, Husband had opened account 9443 with Smith Barney. The account was titled in his name only and managed by the parties' financial advisor, Geddings Crawford. Shortly after the stroke, Wife and Crawford went to a bank lockbox to remove stock certificates in Husband's name. At Husband's direction, they placed the stocks from the lockbox and other securities in account 9443. Husband then gave Wife power of attorney, and thereafter, she exercised control over that account, writing checks from it as necessary to cover household expenses. Additionally, other assets were placed in the account over the course of their marriage. For example, distributions from a charitable remainder trust and funds from

the parties' joint checking account were transferred into the account.

After Husband's stroke, the parties created the Wilburn Family Limited Partnership to which they both contributed assets. Husband and Wife each have a one percent interest in the partnership and their sons have the remaining ninety-eight percent. Husband is the general partner and can pay himself management fees at his discretion.

Additionally, the parties created the Paul E. Wilburn III Charitable Remainder Unitrust, an irrevocable trust, in order to provide them with money during their lifetimes. Under the terms of the trust, Husband receives an annual distribution in the amount of 7% of the value of the trust until his death, and then Wife is to receive an identical distribution until her death, at which time the remainder goes to Presbyterian College.

In 2002, Wife was diagnosed with breast cancer. According to Wife, Husband's response to her illness was primarily concern as to who would care for him. She underwent chemotherapy, a double mastectomy, as well as a hysterectomy. Eventually, the cancer went into remission, and in 2004 she finally began to feel she had recovered.

As Wife was coping with her own illness, she perceived Husband as having become paranoid, irritable, and obsessed with finding a cure for his paralysis. Eventually, the marital relationship became unbearable for her. In 2008, she rented an apartment nearby, but remained in the marital home for five months thereafter to ensure Husband would be cared for when she left. In October of 2008, Wife left the marital home, moved into her apartment, and filed a complaint for separate support and maintenance. Husband then revoked Wife's power of attorney. He also opened two bank accounts—Palmetto Bank accounts 0109 and 8819—and transferred the majority of the assets in account 9443 into those accounts.

Shortly after filing her initial complaint, Wife filed a motion to appoint a guardian *ad litem* for Husband and a motion to supplement the complaint to seek a divorce and to bifurcate the issue of divorce from the other issues. The family court granted both motions and subsequently granted Wife a divorce based on one year's separation. Following a trial on the remaining issues, the family court entered an order classifying

the parties' assets as marital or nonmarital, dividing the marital estate, reserving jurisdiction on the issue of alimony, and ordering Husband to pay Wife's attorney's fees and costs. Husband appealed, raising numerous issues related to the family court's identification of marital property, equitable division of the marital estate, reservation of alimony to Wife, and award of attorney's fees and costs.

## STANDARD OF REVIEW

This Court exercises de novo review over appeals in family court cases. *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). However, we recognize this broad scope of review does not alter the fact that a family court is better able to make credibility determinations because it has the opportunity to observe the witnesses. *Id.* Additionally, the de novo standard does not relieve the appellant of the burden of identifying error in the family court's findings. *Id.* Accordingly, the decision of the family court will be upheld unless the Court finds that a preponderance of the evidence weighs against the family court's decision. *Id.*

## LAW/ANALYSIS

## I. EQUITABLE DIVISION

### A. Husband's Federal Annuity Payments

Husband contends the family court erred in classifying the monthly annuity payments he receives from the United States as marital property. We disagree.

Subject to certain exceptions, marital property is defined as "all real and personal property which has been acquired by the parties during marriage and which is owned as of the date of filing or commencement of marital litigation." S.C.Code § 20–3–630(A) (Supp.2011). When confronted with benefits, such as Husband's annuity, that are not specifically addressed by the statute, we look to their nature and purpose to determine if they are marital property. *See, e.g., Tiffault v. Tiffault*, 303 S.C. 391, 392–93, 401 S.E.2d 157, 158 (1991) (considering vested military retirement benefits); *Hardwick v. Hardwick*, 303 S.C. 256, 259–60, 399 S.E.2d 791, 793 (Ct.App. 1990) (considering a vested retirement fund).

We have consistently held that a retirement benefit earned during the marriage, whether vested or nonvested, is deferred compensation, and thus, is marital property. *See, e.g., Ball v. Ball,* 314 S.C. 445, 447, 445 S.E.2d 449, 450 (1994). A retirement benefit is marital property because spouses contribute to one another's careers and both spouses defer assets they otherwise would have received during the marriage in exchange for the benefit. *Id.* However, disability benefits are treated as income rather than marital property. *Tinsley v. Tinsley,* 326 S.C. 374, 381–82, 483 S.E.2d 198, 202 (Ct.App.1997). A disability benefit replaces the income a spouse would earn were he or she not disabled, and thus, functions as income, rather than as an asset earned during the course of the marriage. *Id.*

Here, the family court described the benefit as a pension Husband earned through his employment during the marriage. It found the pension was a disability benefit following Husband's stroke, but converted to a pension when Husband reached the retirement age of sixty-two, which occurred shortly before the trial. Accordingly, the court held the annuity was a vested retirement benefit and thus, marital property subject to equitable division; it ordered Husband to pay Wife fifty percent of all monies he received from the pension.

While Husband did begin receiving the annuity payments when he became disabled following his stroke, the record establishes by a preponderance of the evidence that the benefit was and always has been a retirement benefit. Wife testified she understood the benefit to be a pension and that Husband was able to access the money earlier than the normal retirement date because of his disability. In other words, she believed he received the benefits because he became eligible for and took early retirement due to his disability. Wife also testified that she understood the benefit as converting to a retirement benefit when Husband reached age sixty-two. Husband offered no evidence as to the nature of the annuity payments.

More importantly, the records produced by the United States Office of Personnel Management which administers Husband's annuity indicate it was a retirement benefit. Those

records, which were introduced by Wife, contain an "Application for Immediate Retirement" completed by Husband shortly after his stroke. The application asked "Is this an application for disability retirement?" and Husband indicated it was. The records also repeatedly refer to the annuity as a "disability retirement" and state that "disability retirement is a lifetime benefit." The records make clear that the benefit comes from Husband's participation in the Civil Service Retirement System. Also, contrary to the family court's finding, the records contain no indication that the benefit converted to another form when Husband reached age sixty-two.

Therefore, while we disagree with the family court judge that the character of the annuity Husband began receiving upon his disability changed when he turned sixty-two, we conclude the preponderance of the evidence establishes it was a retirement benefit which he received early because of his disability. Thus, we hold the benefit was properly classified as marital property, and affirm the family court as modified.

### B. Smith Barney Account 9443 and Palmetto Bank Accounts 0109 and 8819

Husband contends the family court erred in finding that Smith Barney account 9443 and Palmetto Bank accounts 0109 and 8819 were marital property. He asserts the accounts were nonmarital from inception because they only contain his nonmarital property, specifically stocks he inherited, and because the accounts did not undergo transmutation. We find the record does not support Husband's contentions and accordingly affirm the classification of the accounts as marital property.

■■ A party claiming an equitable interest in property upon divorce bears the burden of proving the property is marital. *Miller v. Miller*, 293 S.C. 69, 71 n. 2, 358 S.E.2d 710, 711 n. 2 (1987). If the party presents evidence to show the property is marital, the burden shifts to the other spouse to present evidence to establish the property's nonmarital character. *Johnson v. Johnson*, 296 S.C. 289, 294, 372 S.E.2d 107, 110 (Ct.App.1988).

The family court found there was no evidence of which specific securities were used to create account 9443, and while

there was evidence that some of the securities in the account were inherited, there was also evidence that other securities in the account were purchased during the marriage and in exchange for marital assets, thus rendering them marital property. Additionally, the court found the account became marital property through transmutation because of how the account was used and controlled.

We find Wife satisfied her burden of proving account 9443 was marital. She testified the account was funded not only with stocks Husband inherited but also with stocks he purchased during the marriage, distributions from the charitable remainder trust, and funds from a joint checking account. Additionally, their financial advisor, Crawford, testified that when he started working for the parties, account 9443 was a longstanding account with his firm that contained between a quarter and a half million dollars in assets, and he and Wife collected the stock certificates from the lockbox and placed them in the account after Husband's stroke. He testified that the stock certificates were all in Husband's name, but otherwise he did not provide any details as to their origins.

The burden thus shifted to Husband to establish the nonmarital character of the account. Husband asserts the only assets placed in account 9443 were stocks he inherited, and property a party acquires through inheritance is not marital property. S.C.Code § 20–3–630(A)(1). However, Husband testified that account 9443 could also contain stocks his mother gave to Wife, Wife's nonmarital stocks, and stocks he purchased using income earned from his employment during the marriage. Thus, Husband's own testimony was contradictory as to the character of the assets in account 9443, and he did not carry his burden of establishing it contained only his nonmarital property. Therefore, we agree with the family court that Smith Barney account 9443 was marital property. Because the two Palmetto Bank accounts were funded solely from account 9443, those accounts were also marital property. Having found account 9443 was marital property from its inception, we need not consider the family court's alternate holding that the account underwent transmutation. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to

address the remaining issues where a prior issue was dispositive).

## C. The McDonald Tract

Husband argues the family court erred in finding the McDonald Tract, a timber farm he inherited from his mother and valued at $740,710, had become marital property through transmutation. We agree.

Property that is nonmarital when acquired may be transmuted into marital property if it becomes so commingled with marital property that it is no longer traceable, is titled jointly, or is used by the parties in support of the marriage or in some other way that establishes the parties' intent to make it marital property. *Trimnal v. Trimnal*, 287 S.C. 495, 497–98, 339 S.E.2d 869, 871 (1986).

The family court found the McDonald Tract became marital property through transmutation due to Wife's contributions to the management of the property and the use of proceeds from the property in support of the marriage. While Wife testified that she devoted considerable time to managing the tract, Husband disputed the extent to which she did so. He testified he made all of the decisions in consultation with the forester, Charles Sibley. Sibley testified that both parties managed the property. Proceeds from timber sales from the property were deposited into the parties' joint checking account. When the value of the joint checking account exceeded $100,000, Wife took money from the account and deposited it into Smith Barney account 9443.

First, Wife's contributions to the management of the property are not sufficient to establish transmutation. While the expenditure of time and labor on property may be some evidence of the intent of the parties to treat property as marital, it alone is not enough to establish intent. *See Pruitt v. Pruitt*, 389 S.C. 250, 263, 697 S.E.2d 702, 709 (Ct.App.2010) (holding the wife's labor in finishing the construction of the marital home did not show the husband's intent to treat the home as marital property); *Murray v. Murray*, 312 S.C. 154, 158, 439 S.E.2d 312, 315 (Ct.App.1993) (holding the wife's labor in improving the marital home over seventeen years did

not establish transmutation because "contributions of time and labor do not necessarily prove transmutation").

Also, the use of income from the property in support of the marriage does not establish transmutation. This issue was addressed in *Peterkin v. Peterkin*, 293 S.C. 311, 360 S.E.2d 311 (1987), where the husband inherited and received as gifts certain real estate, and the wife claimed the properties underwent transmutation in part because income from the properties was placed in the parties' joint account and used for family expenses. *Id.* at 313, 360 S.E.2d at 312. This Court held that while the use of property in support of a marriage is relevant to transmutation, the mere use of income from non-marital assets does not transmute those assets into marital property and is not relevant to transmutation. *Id.* at 313, 360 S.E.2d at 313.

Accordingly, we find Wife's contributions to the management of the property and the use of income from the property in support of the marriage do not establish transmutation. Therefore, the McDonald Tract was Husband's nonmarital property, and the family court erred in identifying it as marital property.

## D. Wife's Nonmarital Assets

Husband argues the family court erred in classifying three accounts, Smith Barney account 9515, Bank of America money market account 9902, and Bank of America certificate of deposit 5004, as Wife's nonmarital assets.[1] He asserts Wife failed to produce sufficient evidence to establish the source of the funds in the accounts and that the court improperly placed the burden on him to establish the marital nature of the assets. We disagree.

Wife presented testimony that the funds in each of the three disputed accounts were nonmarital property because they were inherited, gifted, or acquired before the marriage. *See* S.C.Code § 20–3–630(A) (excepting these properties from marital property). Husband adduced no evidence to contradict this testimony. Instead, Husband argues her testimony

---

1. The total value of these three accounts at the time of trial was $379,529.

was insufficient because she failed to present any documentary evidence. However, Wife's testimony, absent any evidence to the contrary, is sufficient to establish the source of the funds in these accounts.

Husband also argues the family court erred by accepting Wife's testimony concerning the source of the funds in her accounts when it did not accept his testimony concerning the source of the funds in Smith Barney account 9443. Thus, according to Husband, the family court unfairly manipulated the burden of proof against him. Husband's argument overlooks the evidence presented as to those assets. As noted, Husband did not contest Wife's testimony that the assets in her accounts were nonmarital. His failure to offer evidence controverting Wife's testimony is sufficient justification to affirm the family court. *See Honea v. Honea,* 292 S.C. 456, 357 S.E.2d 191 (Ct.App.1987) ("[A] party cannot sit back at trial without offering proof, then come to this Court complaining of the insufficiency of the evidence to support the family court's findings."). Regarding account 9443, Wife testified that it was funded in part by marital assets, and Husband conceded that could well be the case. Husband's concession as to the character of some of the assets used to fund this account together with Wife's testimony are enough to support affirming the family court on this issue. Accordingly, we find no error in the classification of these accounts, respectively, as marital and nonmarital property.

### E. Trust Distributions

Husband also claims the family court erred in treating his distributions from the irrevocable Paul Wilburn III Charitable Remainder Unitrust as marital property and ordering him to pay Wife half of all distributions he receives. He asserts that the trust cannot be marital property because neither party owns the trust.[2] While we agree that the trust

---

2. Husband also contends the family court erred because the spendthrift provision of the trust prohibits the allocation of distributions to Wife and the marital property statute excludes from marital property any property excluded by written contract. Husband did not present that argument to the family court, and therefore, it is not preserved for our review. *See State v. Byram,* 326 S.C. 107, 113, 485 S.E.2d 360, 363

was not marital property, we find the trust distributions are a marital asset subject to equitable division and accordingly affirm the family court.

While this is an issue of first impression in South Carolina, courts in other jurisdictions have held that trust distributions were marital property. For example, the New Hampshire Supreme Court considered an order holding that the corpus of a trust was not marital property but the right to receive distributions from the trust was marital property. *In re Chamberlin*, 155 N.H. 13, 918 A.2d 1 (2007). Compared to South Carolina's statutory definition of marital property, the New Hampshire court employed the more expansive definition contained in that state's statute under which any property belonging to either spouse, regardless of title, is marital property.[3] *Id.* at 4. The court held that a trust creates separate legal interests, one in the trust corpus and another in the distributions. *Id.* at 5. The court also held that once the parties placed property in the trust, they no longer owned that property, and therefore, the corpus was not marital property. *Id.* at 4. However, it held that the right to receive distributions from the trust was marital property. *Id.* at 5.

The Vermont Supreme Court, applying a definition of marital property similar to New Hampshire's, as any property owned by a spouse, held that the right to receive distributions from a trust was marital property. *Chilkott v. Chilkott*, 158 Vt. 193, 607 A.2d 883 (1992). The trust there was similar to the trust at issue here, in that upon the death of his mother, the husband was entitled to receive distributions from the trust, and upon his death, the wife was to receive distributions from the trust. *Id.* at 883–84. The husband argued his

---

(1997) (holding an appellant cannot argue one ground at trial and then another ground on appeal).

3. The South Carolina Code defines marital property as "all real and personal property which has been acquired by the parties during marriage and which is owned as of the date of filing or commencement of marital litigation...." S.C.Code § 20–3–630. The statute then excludes from marital property all property acquired by "inheritance, devise, bequest, or gift from a party other than the spouse," acquired before or after the marriage, property acquired in exchange for such property, excluded by written contract of the parties, and any increase in value of such property. *Id.*

interest in the trust was not marital property because he did not own the trust. *Id.* at 884. The court concluded the parties owned an interest in the trust distributions and that interest was marital property. *Id.* at 883.

 The parties did not direct us to any cases holding that trust distributions were not marital property, and we have found none. Therefore, while we hold the trust corpus is not the property of either spouse and thus cannot be marital property, we hold that trust distributions can be marital property depending on how and when the interest was acquired or if the interest has undergone transmutation.[4]

 While the family court here was not explicit, we conclude it found the trust distributions had undergone transmutation because it based its holding on findings that the intent behind the creation of the trust was to provide the parties with income during their lifetimes and that distributions from the trust were deposited into Smith Barney account 9443. The family court found, and Wife's testimony established, that the trust was created with the intent to provide for Husband and Wife for the remainder of their lives. That intent was also evidenced by the terms of the trust that provided distributions to Husband for life and then to Wife for life following Husband's death. The distributions were deposited into Smith Barney account 9443, and the funds in that account were used in support of the marriage. Additionally, Husband was clearly aware that the distributions were being used in support of the marriage because he attended yearly meetings discussing the performance of that account and the parties' anticipated future needs. Taking these facts together, we find the parties intended, from the time the trust was created, to treat the right to receive distributions as marital property; therefore, transmutation was established. Accordingly, we affirm the family court's finding that the right to receive distributions was marital property.

4. Due to the expansive definition of marital property in New Hampshire and Vermont as any property owned by a spouse, once those courts found a spouse had a legal interest in trust distributions, the distributions were also deemed to be marital property. Our State's narrower definition of marital property causes our holding to also be narrower.

## F. The Marital Home

 Husband contends the family court erred in arbitrarily dividing the marital home. Specifically, Husband asserts the court awarded him the home but then effectively rescinded that award by requiring him to pay Wife almost the entire value of the home.

Husband also contends the court erred because the apportionment deprived him of his $60,958 in nonmarital equity in the home. In apportioning the marital property, the family court awarded the home to Husband and ordered him to pay Wife $500,000 at the earlier of the sale of the home or thirty days after the entry of the final order. The family court also assigned Husband $60,958 as his nonmarital property for the reduction in the mortgage balance which resulted from payments Husband made after the date of filing and before trial. Husband asserts that the home was worth $512,814 at the time of trial, and thus by apportioning $512,814 to the parties as marital property, the court deprived him of the $60,958 in nonmarital equity because the entire value of the home had already been apportioned.

We find no error in the apportionment of the marital home. Initially, we note that the family court's award of the home to Husband combined with the order to pay Wife was not in error. In order to make an in-kind distribution of the home to Husband and effect the equitable division deemed appropriate, the family court required him to pay a sum of money to Wife. Although the order stated the lump sum payment could be satisfied through the sale of the home, it also gave Husband the option of paying Wife within ninety days presumably from other funds or the liquidation of another asset. It was Husband's choice as to how to satisfy the obligation. Accordingly, we reject Husband's argument that the family court awarded him the marital home and then effectively rescinded that award by requiring him to make a payment to Wife in an amount close to the total value of the home.

Husband introduced a schedule of marital assets listing the value of the home both on the date of filing and date of trial as $512,814. However, he presented no evidence in support of that value. Wife also presented a schedule of assets, which stated the fair market value of the home was $810,000 on the

390

date of filing, but subject to a mortgage balance of $297,186, for a value to the parties of $512,814. Her schedule listed the value of the home on the date of trial as $573,772, and stated the change in value was due to payments made against the mortgage during the pendency of action. In support, Wife introduced an appraisal of the home completed near the date of filing, listing the value as $810,000. She also introduced a mortgage loan statement contemporaneous with the date of filing stating the principal balance was $297,185.83, and a statement contemporaneous with the date of trial stating the principal balance was $236,227.61. The parties agree and the court found that Husband paid down the mortgage balance on the home by $60,958 during the action. Thus, accepting the only evidence presented, the family court must have concluded the value of the home was $573,772 at the time of trial. The family court therefore did not deprive Husband of any of his nonmarital asset of increased equity in the home by apportioning $573,772 as marital and nonmarital assets to the parties. Accordingly, we affirm the family court's apportionment of the marital home.

### G. Overall Equitable Division of the Marital Estate

Husband contends the family court erred in apportioning the marital estate because he contributed the majority of the property to the marriage through his inheritances. He asserts he should have received more than approximately one-half of the marital estate and proposes that he receive sixty percent of the estate. We disagree.

Upon divorce, the family court is required to make a final equitable apportionment of the marital estate, and in making the apportionment the court is required to consider fifteen statutory factors. S.C.Code § 20–3–620 (Supp.2011). On appeal, we must review the fairness of the overall apportionment, and if equitable, we will uphold it regardless of whether we would have weighed specific factors differently. *Roberson v. Roberson,* 359 S.C. 384, 389, 597 S.E.2d 840, 842 (Ct.App.2004). In short, the family court's apportionment will not be overturned on appeal absent an abuse of discretion. *Murphy v. Murphy,* 319 S.C. 324, 329, 461 S.E.2d 39, 41–42 (1995).

Here, after resolving the parties' disputes as to the marital versus nonmarital nature of their property, the family court set out "Schedule 4" which apportioned the marital assets. Of the $3,888,758 in assets and debts for which the family court identified a value, the court awarded Wife $1,744,765.50 or 45% and awarded Husband $2,143,992.50 or 55%.[5]

The family court made extensive factual findings and generally considered all fifteen statutory factors. In particular, the family court found Wife was able to obtain employment but faced great difficulty in doing so due to her lack of skills and long absence from the workforce. Husband neither was employed, nor could he gain employment due to his disability. However, the family court also found Husband had an income of $9,250 per month, or $111,000 per year, from various assets and could increase his income by paying himself a management fee for serving as general partner of the Wilburn Limited Partnership or by cutting timber he owned. The family court found Wife had income of approximately $1,000 per month from a family partnership held by her family and she was capable of earning approximately $1,300 per month through employment. Related to their ability to earn income was the parties' health. Wife's cancer was in remission at the time of trial and she was otherwise in good health. Husband was permanently disabled from his stroke and suffered from a long history of depression. Additionally, after the family court's equitable apportionment, the parties would each receive approximately $1,532.52 per month from the federal annuity and $1,975.08 per month from the Paul E. Wilburn III Charitable Remainder Trust.

---

5. Schedule 4 stated that Wife was to receive $1,744,768 and Husband was to receive $2,143,995, but those totals reflect a slight addition error. Also, we note the family court gave each party half of four marital assets without stating a value for those assets: the parties' one percent interest in the Wilburn Limited Partnership, the distributions from the federal annuity, the distributions from the Paul E. Wilburn III Charitable Remainder Trust, and the Smith Barney # 607-18926 Paul E. Wilburn III TTEE FBO I. Remainder Trust. While those assets are relevant under the statutory factors for apportionment and to the extent possible we consider them, they were not included in the family court's consideration of the total amount of marital property awarded to each party either because no evidence as to their value was presented at trial or they are assets that provide recurring payments subject to fluctuation.

The value of the marital property was $3,888,758, and the majority of those assets were acquired through Husband's inheritances. The family court found Husband had $614,344 and Wife had $346,297 in nonmarital assets. The parties also had minimal debts in relation to their assets. While the family court did not state its reasons for doing so, it awarded the marital home to Husband. However, as previously discussed, the court gave Husband the option of keeping the home or selling it, and thus, Husband cannot complain about the court's consideration of this factor. Neither party was awarded separate maintenance or alimony.

Additionally, in light of our holding with respect to the McDonald Tract, the marital estate will now be significantly smaller and Husband's nonmarital assets will be significantly larger. Thus, following this appeal, Wife has an even greater need for a large portion of the marital estate.

■ In conclusion, we find no abuse of discretion in the family court's apportionment. Unquestionably, Husband contributed the majority of the assets and has serious medical expenses, however, this was a thirty year marriage and Wife spent many years contributing to the marriage as well as caring for Husband in addition to the parties' children. While Wife was not awarded alimony due to the size and apportionment of the marital estate as well as husband's disability, there is no question she otherwise would have been a candidate for permanent alimony. Because of all these circumstances, we affirm the family court's equitable division of the marital estate of 45% to Wife and 55% to Husband.

## II. RESERVATION OF JURISDICTION ON ALIMONY

Husband contends the family court erred in reserving jurisdiction to award Wife alimony because there were no exigent circumstances present to justify the reservation. We agree.

■ Alimony may be reserved where the family court identifies circumstances that are likely to create a need for alimony in the reasonably near future. *Donahue v. Donahue*, 299 S.C. 353, 363, 384 S.E.2d 741, 747 (1989). Where a spouse does not need alimony at the time of trial and there is no evidence the spouse has an illness, the spouse's needs will foreseeably change in the near future, or some other extenuat-

ing circumstance, it is error to reserve jurisdiction on alimony. *Id.*

At trial, Wife testified that if she received her requested apportionment of the marital estate, she did not want alimony, but that if the requested division was not awarded, she would need alimony. Additionally, Wife's counsel stated to the family court that alimony would only be appropriate if the family court or an appellate court did not agree with Wife's proposed apportionment of the marital estate. Wife presented no evidence of physical or mental illness, foreseeable future need, or other extenuating circumstances. While she testified she had suffered from breast cancer in the past, she did not assert the cancer as a reason to reserve alimony. She also testified the cancer was in remission and she had been healthy for several years prior to the trial.

The family court held that due to the equitable apportionment of the marital property, the parties would each have sufficient assets to provide for them and alimony was not necessary. However, the court reserved the issue of alimony if, on appeal, the equitable apportionment was not upheld as provided in the final order. Thus, the family court reserved the issue of alimony solely on the basis that its equitable division might be altered on appeal.

While we appreciate the dilemma in which Wife could find herself if her equitable division award was drastically altered on appeal, we decline to hold that possible changes in equitable apportionment on appeal constitute a sufficient justification for the reservation of alimony. Were we to hold otherwise, the reservation of alimony would be appropriate in every case and our prior case law on the reservation of alimony would be superfluous. Accordingly, we hold the family court erred in reserving jurisdiction on alimony.

### III. ATTORNEY'S FEES AND COSTS

Finally, Husband contends the family court erred in ordering Husband to pay all $156,182 of Wife's attorney's fees and costs because the court did not consider the required factors, and even to the extent the court did properly consider the factors, it reached an erroneous result. In light of our holdings herein, the beneficial results obtained by Wife and the

parties' respective financial conditions have markedly changed. *See E.D.M. v. T.A.M.,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992) (listing the factors to be considered in determining whether to make an award); *Glasscock v. Glasscock,* 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991) (listing the factors to be considered in determining the amount of an award). Therefore, we conclude the attorney's fee award should be reduced and Husband shall pay only half of Wife's attorney's fees and costs.

## CONCLUSION

For the reasons set forth, we affirm in part and reverse in part the family court order. We affirm the classification of Husband's annuity payments, account 9443, the Palmetto Bank accounts, and the trust distributions as marital property, the classification of Wife's three accounts as her nonmarital property, the apportionment of the marital home, and the ratio used to divide the marital estate. However, we conclude the family court erred in finding the McDonald Tract was marital property and in reserving jurisdiction on the issue of alimony. Also, we reduce the award of attorney's fees and costs to $78,091.

We modify the family court's equitable apportionment by removing the McDonald Tract, valued at $740,710, from the marital estate and deeming it Husband's nonmarital property. That modification reduces the marital estate from $3,888,763 to $3,148,053. In order to effect the 45%/55% equitable division ordered by the family court, we reduce the $500,000 payment Husband was ordered to make to Wife to $171,856.10. In total, in addition to the approximately $3,507.60 per month Wife will receive from Husband's federal annuity and trust distributions, Wife shall receive $1,416,621.60 of the marital assets identified on Schedule 4, and Husband shall receive $1,731,426.40.

TOAL, C.J., PLEICONES, BEATTY, JJ., and Acting Justice JAMES E. MOORE, concur.