WILLIAMS, J.:
**426 In this domestic relations matter, Grady C. Odom (Husband) appeals the family court's divorce decree, arguing the family court erred in (1) finding that Husband's limited liability company, Twin Oaks Villas, LLC (the LLC), transmuted into marital property; (2) imposing a constructive trust on the LLC; and (3) including property in the *186 marital estate that the parties did not own as of the date of filing. We affirm.
FACTS/PROCEDURAL HISTORY
Husband and Wife married on April 27, 2006. This was both parties' third marriage. They had no children together during their eight-year marriage; however, each party had two adult children from prior marriages. Wife filed for divorce on May 30, 2013, citing a one-year continuous separation as of December 15, 2012.
Prior to the parties' marriage, Husband formed two businesses: the LLC and Twin Oaks Personal Care, Inc. (the Corporation). The LLC owned a building in North Charleston, South Carolina. The Corporation managed and ran an assisted living facility in the LLC's building. Husband was the sole member of the LLC and the sole stockholder in the Corporation. In 1994, Husband approached Wife, a family friend at the time, for a $60,000 loan to refinance the entities. In 2003, Wife left college to work for the entities.
Wife testified that during the marriage she assisted Husband in making business decisions for the LLC, worked without pay at times, invested in the entities in lieu of putting funds in a retirement account, and assisted in obtaining a $2.4 million Housing and Urban Development (HUD) loan for the LLC. She also testified that during the marriage she devoted **427 her time and money into the entities as an investment for herself and her children and believed Husband regarded the entities as marital property. Wife and Wife's son (Son) testified Husband held Wife out as a fifty-fifty partner in the Corporation and the LLC during the marriage. Wife testified Husband assured her he would complete the necessary paperwork to transfer fifty percent ownership to Wife after he obtained a HUD loan during the marriage; however, Husband never transferred the shares to Wife. Husband claimed that when the parties separated on December 15, 2012, Wife's involvement with the Corporation and the LLC ceased.
On May 15, 2008, Husband entered into an installment sales contract with Husband's Uncle, Ruben Odom (Uncle), for Husband to acquire 30.05 acres of land (the Ruben Odom Property) from Uncle for $60,092.[1] Husband used marital funds to pay a $10,000 down payment and for two of the three $16,679.99 monthly installment payments to Uncle, as lienholder. In June 2010, Husband notified Uncle of his inability to pay the outstanding $17,522.31 balance, and the parties refinanced the monthly payments to $282.20. However, Husband again defaulted on monthly payments, and Uncle filed a complaint for foreclosure on the Ruben Odom Property. Using marital funds, Husband paid Uncle a total of $48,445 under the installment contract but still owed $11,647.46. On April 18, 2013, Husband, without Wife's knowledge, executed a quitclaim deed which conveyed the Ruben Odom Property to Uncle in lieu of foreclosure. On July 3, 2013, Husband filed a corrective quitclaim deed, to correct the property description on the Ruben Odom Property deed. Prior to Uncle's April 3, 2013 complaint for foreclosure, Husband, without Wife's knowledge, conveyed 251 acres of nonmarital property-worth $452,939-to SJW Holdings, LLC, his ex-wife's LLC, to hold in trust for Husband's daughters.
On July 9, 2013, the family court entered an order restraining the parties from disposing of or encumbering or reducing in value, any properties or assets, including the LLC. However, on December 18, 2013, Husband entered into an agreement to sublease the entities' operations, building, and land for $6,250 a month without Wife's knowledge. On October 28, **428 2014, prior to the conclusion of mediation, Husband abruptly left the mediation and willfully failed to disclose his whereabouts during litigation. Husband failed to appear for the merits hearing, present evidence, or respond to Wife's requests for admissions.[2] On August 17, 2015, the family *187 court issued a final order, including both entities and the Ruben Odom Property in the marital estate.
On January 7, 2016, in response to a motion by Husband to alter or set aside the judgment, the family court entered an amended final order. The court found the Ruben Odom Property constituted marital property and awarded Wife a $48,445-equal to the total marital funds invested in the property-interest in the property. Based on evidence that the parties worked jointly as partners throughout the marriage and that Husband promised Wife an interest in the business, the court found the Corporation and the LLC each transmuted into marital property, as well as the $6,250 monthly rent payment. The court awarded Husband possession, use, and ownership of the entities; awarded Wife a one-half interest in the entities; and ordered a judgment in favor of Wife in the amount of $590,018 to effectuate a fifty-fifty division. The court awarded Wife an equitable interest in the entities by virtue of a constructive trust and imposed a judicial lien on the entities, in favor of Wife, to secure the $590,018 judgment. This appeal followed.
ISSUES ON APPEAL
I. Did the family court err in finding the LLC transmuted into marital property?
II. Did the family court err in imposing a constructive trust on the LLC?
III. Did the family court err in including property in the marital estate that the parties did not own as of the date of filing?
**429 STANDARD OF REVIEW
The appellate court reviews decisions of the family court de novo. Stoney v. Stoney , 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) (per curiam). In a de novo review, the appellate court is free to make its own findings of fact but must remember the family court was in a better position to make credibility determinations. Lewis v. Lewis , 392 S.C. 381, 385, 709 S.E.2d 650, 651-52 (2011). "Consistent with this de novo review, the appellant retains the burden to show that the family court's findings are not supported by a preponderance of the evidence; otherwise, the findings will be affirmed." Ashburn v. Rogers , 420 S.C. 411, 416, 803 S.E.2d 469, 471 (Ct. App. 2017). On the other hand, evidentiary and procedural rulings of the family court are reviewed for an abuse of discretion. Stoney , 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2.
An action to declare a constructive trust is one in equity, and the appellate court may find facts in accordance with its own view of the evidence. Lollis v. Lollis , 291 S.C. 525, 530, 354 S.E.2d 559, 561 (1987).
LAW/ANALYSIS
I. Transmutation of the Entities
Husband argues the family court erred in finding the LLC transmuted into marital property. We disagree.
A. Preservation
As an initial matter, on appeal, Wife argues Husband's entity distinction argument is not preserved for our review because Husband first raised the argument in his motion to alter or set aside the judgment. We find this issue is preserved.
"Post-trial motions are ... utilized to raise issues that could not have been raised at trial." Jean Toal et al., Appellate Practice in South Carolina 189 (3d ed. 2016). "A post-trial motion must be made when the [family] court either grants relief not requested or rules on an issue not raised at trial." Fryer v. S.C. Law Enf't Div. , 369 S.C. 395, 399, 631 S.E.2d 918, 920 (Ct. App. 2006).
**430 The first time the family court ruled on whether the Corporation and the LLC transmuted into marital property was in the final order. Husband filed a motion to alter or set aside the judgment and argued for the first time that the evidence did not support the family court's finding that both the Corporation and the LLC transmuted into marital property. In its amended final order, the family court addressed this issue on the merits and found sufficient evidence supported its finding that both the Corporation and the LLC transmuted into marital property.
*188 We find Husband properly raised the argument that the LLC and the Corporation are two separate entities through his Rule 59(e), SCRCP, motion. The family court's ruling, which treated Wife's involvement with the entities as a whole, rather than separate entities, created the distinction issue. See Buist v. Buist , 410 S.C. 569, 576, 766 S.E.2d 381, 384 (2014) (holding an alleged error in awarding attorney's fees can be raised for the first time in a motion to reconsider, in order to preserve the error for appellate review); Anderson Cty. v. Preston , 420 S.C. 546, 569, 804 S.E.2d 282, 294 (Ct. App. 2017) (finding the issue of whether a quorum at a county council meeting was destroyed by council members' conflicts of interest was not raised prior to trial or ruled upon during trial, and therefore the county's post-trial motion raising the issue was sufficient to preserve it for appeal, when the circuit court never ruled at trial whether votes in question were invalid based upon conflict of interest, and the court did not find, until issuance of its final order, that council members who made those votes were disqualified from voting due to conflicts of interest), cert. granted , S.C. Sup. Ct. order dated March 29, 2018; cf. Hickman v. Hickman , 301 S.C. 455, 456, 392 S.E.2d 481, 482 (Ct. App. 1990) ("A party cannot use Rule 59(e) to present to the court an issue the party could have raised prior to judgment but did not.").
Because we find Husband's motion to alter or set aside the judgment constituted a timely challenge to the family court's finding of transmutation of both entities, the issue is preserved for our review.
B. Transmutation
Husband argues the LLC did not transmute into marital property and Wife only contributed to the Corporation, not **431 the LLC.[3] We disagree.
With certain exceptions, marital property is "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation ... regardless of how legal title is held." S.C. Code Ann. § 20-3-630(A) (2014). "Equitable distribution of marital property 'is based on the recognition that marriage is, among other things, an economic partnership.' " Crossland v. Crossland , 408 S.C. 443, 456, 759 S.E.2d 419, 426 (2014) (quoting Morris v. Morris , 335 S.C. 525, 531, 517 S.E.2d 720, 723 (Ct. App. 1999) ). "Upon dissolution of the marriage, marital property should be divided and distributed in a manner [that] fairly reflects each spouse's contribution to its acquisition, regardless of who holds legal title." Id. (quoting Morris , 335 S.C. at 531, 517 S.E.2d at 723 ).
Nonmarital property may transmute into marital property if "[1] it becomes so commingled with marital property that it is no longer traceable, [2] is titled jointly, or [3] is used by the parties in support of the marriage or in some other way that establishes the parties' intent to make it marital property." Wilburn v. Wilburn , 403 S.C. 372, 384, 743 S.E.2d 734, 740 (2013). "Transmutation is a matter of intent to be gleaned from the facts of each case. The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage." Jenkins v. Jenkins , 345 S.C. 88, 98, 545 S.E.2d 531, 537 (Ct. App. 2001). "If the [spouse] presents evidence to show the property is marital, the burden shifts to the other spouse to present evidence to establish the property's nonmarital character." Wilburn , 403 S.C. at 382, 743 S.E.2d at 740. Evidence of transmutation "may include placing the property in joint names, transferring the property to the other spouse as a gift, **432 using the property exclusively for marital purposes, commingling the property with marital property, using marital funds to build equity in the property, or exchanging the property for marital *189 property." Johnson v. Johnson , 296 S.C. 289, 295, 372 S.E.2d 107, 111 (Ct. App. 1988). "The mere use of separate property to support the marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation." Id. at 295-96, 372 S.E.2d at 111.
Here, Husband adamantly contends he never intended the LLC to become marital property; however, transmutation is ultimately a matter of discerning the parties' intent from the facts of the case. See Pittman v. Pittman , 407 S.C. 141, 151, 754 S.E.2d 501, 506 (2014) ("[T]ransmutation is ultimately a matter of discerning the parties' intent." (emphasis added) ). Husband failed to appear at trial, call witnesses to rebut Wife's transmutation testimony, or respond to Wife's requests for admissions. See Rule 220(c), SCACR (stating the appellate court may affirm for any reason appearing in the record); Rule 36, SCRCP (stating a matter is deemed admitted when the party served fails to respond with a written answer or objection regarding the admission). "[A] party cannot sit back at trial without offering proof, then come to this [c]ourt complaining of the insufficiency of the evidence to support the family court's findings." Honea v. Honea , 292 S.C. 456, 458, 357 S.E.2d 191, 192 (Ct. App. 1987) ; see also Wilburn , 403 S.C. at 386, 743 S.E.2d at 741 ("[The h]usband did not contest [the w]ife's testimony that the assets in her accounts were nonmarital. His failure to offer evidence controverting [the w]ife's testimony is sufficient justification to affirm the family court."). Husband's memorandum in support of his motion to alter or set aside the judgment is the only item in the record supporting Husband's argument that he lacked the intent to transmute the LLC into marital property because Wife was involved with the Corporation, not the LLC. However, a memorandum in support of a motion is not evidence. McClurg v. Deaton , 395 S.C. 85, 86 n.1, 716 S.E.2d 887, 887 n.1 (2011) ; see also Lewis , 392 S.C. at 384, 709 S.E.2d at 651 (finding the appellate court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence ).
**433 Upon de novo review, we find the preponderance of the evidence supports the family court's finding that the parties' actions during the marriage objectively demonstrated a mutual intent to regard the LLC as a marital asset. For instance, Wife testified extensively about her financial and non-financial marital contributions to the entities, including:
1. Loaning the entities over $200,000[4] during the marriage-including $25,000 to upgrade the LLC's building's telephone system and $17,400 to make noncritical repairs to the building;
2. Assisting in obtaining loans, including a HUD loan, and refinancing loans for the entities;
3. Consulting with architects and engineers to implement Department of Health and Environmental Control (DHEC) regulatory codes;
4. Overseeing compliance with structural standards;
5. Purchasing sheetrock and iron needed for DHEC building upgrades;
6. Coordinating with governmental agencies and participating in DHEC inspections;
7. Attending staff meetings;
8. Overseeing all accounts payable;
9. Assuming responsibility for three bank accounts related to the businesses-which listed her as the LLC's business advisor-and acting as signatory on the parties' personal bank account and the Corporation's bank account;
10. Authorizing and issuing maintenance checks;
11. Handling all correspondence for the entities during 2004, 2005, 2006, 2009, *190 and 2010, including correspondence for the HUD loan;
12. Painting walls and installing ceiling fans; and
13. Purchasing planters and patio furniture.
**434 Additionally, Wife and Son testified Husband introduced Wife as his partner and owner in the entities and intended the LLC to be marital property. Wife testified she worked without pay at times and, in lieu of putting funds in a retirement account, she invested in the entities and had no retirement accounts as a result. See Pittman , 407 S.C. at 151, 754 S.E.2d at 506-07 (finding both parties' significant day-to-day involvement in the business-including the wife's credible testimony that all major business decisions were made jointly, including the parties' decision to structure the wife's pay to benefit both parties at the time and upon the wife's retirement-demonstrated the parties' intent to treat the business as a marital asset); Jenkins , 345 S.C. at 99-100, 545 S.E.2d at 537 (finding both acreage and a rental home the husband inherited transmuted into marital property due in part to the wife's substantial involvement in the general care and maintenance of the property and the parties' strategic plan to make the property part of their joint retirement plan); Wyatt v. Wyatt , 293 S.C. 495, 497, 361 S.E.2d 777, 779 (Ct. App. 1987) ("Though one spouse acquires legal title to property prior to marriage, the discharge of indebtedness by both the husband and wife may transmute the property into marital property.").
Husband failed to respond to Wife's requests for admissions, which included the admissions that Wife assisted in making business decisions for the LLC, she used personal funds to improve the LLC, she worked without pay at times, and she assisted in obtaining a $2.4 million HUD loan for the LLC. Due to Husband's failure to act, the matters contained in Wife's requests for admissions are deemed admitted under Rule 36, SCRCP. See Rule 36, SCRCP (stating matters contained in a request for admission are deemed admitted when the party served fails to respond with a written answer or objection regarding the admission). For the foregoing reasons, we find the LLC transmuted into marital property.
II. Constructive Trust
Husband argues there is no clear and convincing evidence that Wife's actions conferred a benefit on the LLC. We disagree.
**435 A constructive trust arises when a party obtains a benefit "which does not equitably belong to him and which he cannot in good conscience retain or withhold from another who is beneficially entitled to it." SSI Med. Servs., Inc. v. Cox , 301 S.C. 493, 500, 392 S.E.2d 789, 793-94 (1990). "A constructive trust results from fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an obligation in equity to make restitution. Fraud is an essential element, although it need not be actual fraud." Lollis , 291 S.C. at 529, 354 S.E.2d at 561. "In order to establish a constructive trust, the evidence must be clear and convincing." Cox , 301 S.C. at 500, 392 S.E.2d at 794.
On appeal, Husband contends Wife's investments were for the benefit of the Corporation, not the LLC. The record reflects Wife provided a benefit to the LLC in the form of a HUD loan. Wife testified the $25,000 she invested to upgrade the LLC's buildings' telephone system and the $17,400 she invested to make noncritical building repairs were both necessary to procure the HUD loan. The HUD loan, which Wife helped procure and later repay, was obtained for the benefit of the LLC, because the LLC, not the Corporation, was appraised in connection with the HUD loan in 2009. Based on the 2009 appraisal of $3.2 million, the parties obtained a $2.4 million HUD loan. Taking into account all debts, the LLC was valued at $1,130,649 in 2012. By failing to respond to Wife's requests for admissions, the matters contained therein-that Wife used personal funds to improve the LLC and that Wife assisted in making business decisions for the LLC-are admitted. See Rule 36, SCRCP (stating matters contained in a request for admission are deemed admitted when the party served fails to respond with a written answer or objection regarding the admission). The evidence supports *191 the family court's finding that Wife's efforts and investments conferred a benefit on the LLC.
Husband also argues no clear and convincing evidence of fraud exists to impose a constructive trust on the LLC. Wife and Son testified Husband held Wife out as a fifty-fifty partner in the LLC and Wife believed she was making an investment for herself and her children by investing her time and money into the LLC. Wife testified Husband assured her he would complete the necessary paperwork for a share **436 change after the completion of the HUD loan. Husband failed to rebut Wife's testimony on this issue. See Wilburn , 403 S.C. at 386, 743 S.E.2d at 741 ("[The h]usband did not contest Wife's testimony that the assets in her accounts were nonmarital. His failure to offer evidence controverting [the w]ife's testimony is sufficient justification to affirm the family court."). The record contains clear and convincing evidence that Husband fraudulently led Wife to believe she was a partner in the LLC and that Wife, in reliance of Husband's promise of equity in the LLC, devoted efforts that significantly enhanced the LLC's value. Allowing Husband to retain ownership of the LLC to the exclusion of Wife is inequitable. We affirm the imposition of a constructive trust.
III. Ruben Odom Property
Husband argues the family court erred by including property in the marital estate that the parties did not own as of the date of filing. Specifically, Husband argues that because he recorded the quitclaim deed in lieu of foreclosure on April 18, 2013, prior to Wife's May 30, 2013 filing, the property was not in existence on the date of filing and was not subject to equitable distribution.[5] We disagree.
"For the family court to properly include property within the marital estate, two factors must coincide." Shorb v. Shorb , 372 S.C. 623, 632, 643 S.E.2d 124, 129 (Ct. App. 2007) ; see also S.C. Code Ann. § 20-3-630(A) (2014). "First, the property must be acquired during the marriage" and "[s]econd, the property must be owned on the date of filing or **437 commencement of marital litigation." Shorb , 372 S.C. at 632, 643 S.E.2d at 129. The ownership prong may present problematic issues if the family court overlooks assets that should have been included in the marital estate, but were non-existent on the date of filing due to a party's misconduct. Id. "Consequently, if a party attempts to unfairly extinguish ownership of marital property before the date of filing or to improperly delay ownership of marital property until after litigation is commenced, the family court must include that property in the marital estate." Id. ; see also Bowman v. Bowman , 357 S.C. 146, 156, 591 S.E.2d 654, 659 (Ct. App. 2004) ("[W]here lack of ownership status as of the date of marital litigation is attributable to any purposeful act or omission by the spouse, the property shall be deemed 'owned' within the meaning of [ section 20-3-630 ] so as to include the marital portion in the marital estate."). Concluding otherwise would "promote fraud, reward misconduct, and contravene legislative intent." Bowman , 357 S.C. at 155, 591 S.E.2d at 659.
However, the family court will include such property in the marital estate only if the party seeking to classify the property as marital property introduces clear and convincing evidence of fraud in relation to the disposal of the property. See Shorb at 633, 643 S.E.2d at 129 ("Proceeds from [the h]usband's stock options will be considered marital only if the [w]ife introduces clear and convincing evidence to establish fraud in relation to [the h]usband's sale of the options.");
*192 see also Armstrong v. Collins , 366 S.C. 204, 219, 621 S.E.2d 368, 375 (Ct. App. 2005) ("Fraud must be shown by clear and convincing evidence."). "[F]raud will not be presumed, but [one] who alleges it must prove it." Devlin v. Devlin , 89 S.C. 268, 272, 71 S.E. 966, 968 (1911).
As to the first prong, both parties concede that Husband acquired the property during the marriage with marital funds. See Atl. Coast Builders , 398 S.C. at 329, 730 S.E.2d at 285 ("[A]n unappealed ruling, right or wrong, is the law of the case."). With regard to the second prong, Husband's quitclaim deed to Uncle before the date of filing negated the ownership prong necessary to classify the funds as marital property. See Shorb , 372 S.C. at 633, 643 S.E.2d at 130 (finding the sale of stock options, which were acquired during the marriage but **438 sold before the date of filing, negated the ownership prong, which was necessary to classify the proceeds from the sale of the options as marital). Thus, the property is marital property only if Wife introduced clear and convincing evidence of fraud in relation to Husband's disposal of the property. See id. at 633, 643 S.E.2d at 129 ("Proceeds from [the h]usband's stock options will be considered marital only if the [w]ife introduces clear and convincing evidence to establish fraud in relation to [the h]usband's sale of the options.").
The record contains clear and convincing evidence Husband fraudulently executed the quitclaim deed to Uncle in anticipation of divorce. Husband executed the quitclaim deed on April 18, 2013, prior to Wife's May 30, 2013 divorce filing, but more than five months after the parties December 15, 2012 separation.[6] On August 5, 2013, three months after Wife filed for divorce, Husband filed a corrective quitclaim deed. Husband did not afford Wife the opportunity to make the $282 monthly installment payments and avoid foreclosure; rather, he executed the quitclaim deed to Uncle without Wife's knowledge. The $48,445 Husband paid to Uncle under the installment contract came from marital funds, and the funds were lost when Husband executed the quitclaim deed.
Husband claims the quitclaim deed resulted from his inability to make the $282 monthly payments on the $11,647 loan balance. However, we find that prior to Husband claiming he could not afford the installment payments, Husband purposefully divested himself of nonmarital property in anticipation of marital litigation. On January 2, 2013-prior to Uncle's April 3, 2013 complaint for foreclosure-Husband recorded a deed to his daughters through SJW Holdings, LLC, which conveyed nonmarital property with a market value of $452,939. On May 15, 2014, Husband deeded his remainder interest in another plot of land, worth approximately $51,900, to one of his daughters.[7] Husband also retained his ownership interest in the Corporation and the LLC, collectively valued at $1,239,820 in 2012. The record contains clear and convincing evidence **439 Husband intentionally divested himself of nonmarital property, which hindered his ability to avoid foreclosure of the Ruben Odom Property. See Smith v. Smith , 327 S.C. 448, 458-59, 486 S.E.2d 516, 521 (Ct. App. 1997) (holding the family court, in dividing the marital property, properly considered actions taken by the husband before the parties' actual separation, including opening and closing accounts and transferring money).
We find Wife introduced clear and convincing evidence of fraud in relation to Husband's disposal of the Ruben Odom Property. We affirm the inclusion of the Ruben Odom Property in the marital estate.
CONCLUSION
Based on the foregoing analysis, the family court's decision is
AFFIRMED.
LOCKEMY, C.J., and KONDUROS, J., concur.

This land is unrelated to the LLC property.

Wife's requests for admissions included the admissions that Wife assisted Husband in making business decisions for the LLC, she used personal funds to improve the LLC, she worked without pay at times, she assisted in obtaining a $2.4 million HUD loan for the LLC, the LLC was valued at $1,130,649 in 2012, and Husband used marital funds to purchase the Ruben Odom Property.

On appeal, Husband does not contest the family court's ruling that the Corporation transmuted into marital property. This ruling is the law of the case. See Atl. Coast Builders & Contractors, LLC v. Lewis , 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012) (holding an unchallenged ruling becomes the law of the case regardless of whether the ruling is correct); Sanders v. Sanders , 396 S.C. 410, 423 n.2, 722 S.E.2d 15, 21 n.2 (Ct. App. 2011) (holding an unappealed allocation of assets becomes the law of the case).

Wife testified she invested $210,464 of personal funds into the entities, of which she invested $6,000 prior to the marriage. Wife also testified that in 1994 she loaned Husband $60,000 to refinance the entities; however, Husband repaid the 1994 loan, and Wife did not include the loan in the $210,464.

Husband argues two additional grounds warrant overruling the inclusion of the Ruben Odom Property in the marital estate. First, Husband argues the family court erroneously found Husband conveyed the property to his daughter after the foreclosure action. This issue is unpreserved because Husband failed to raise this issue in his Rule 59(e) motion. See Nicholson v. Nicholson , 378 S.C. 523, 537, 663 S.E.2d 74, 81-82 (Ct. App. 2008) (stating an issue must have been raised to and ruled upon by the circuit court to be preserved on appeal, and if the circuit court does not rule on an issue and the appellant does not raise it in a Rule 59(e) motion, it is unpreserved). Second, Husband argues the date of valuation of the Ruben Odom Property should be the date of filing. This issue is unpreserved because Husband failed to include the issue in the statement of issues on appeal. See Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.").

In his amended answer, Husband claimed he left the home in November 2012.

On September 25, 2012, Uncle conveyed this property to Husband, as remainderman, and reserved a life estate.